In the Matter of WA-WA-YANDA, INC., Respondent, *v.* ARTHUR G. DICKERSON, as Building Inspector of the Town of Islip, Appellant.

Second Department, April 8, 1963.

*George F. X. McInerney* for appellant.

*Milton S. Zeiberg* for respondent.

SAMUEL RABIN, J. The basic problem presented on this appeal is whether a town which has granted a lease on land owned in its proprietary capacity, may thereafter, by governmental action

in adopting an amended zoning resolution, curtail the tenant's use of the demised premises as authorized by the leasehold agreement.

At the core of this proceeding is a written lease made on December 31, 1952 by the Town of Islip, as landlord, acting through its then Supervisor, pursuant to a prior resolution adopted by the Town Board. The lease demised to petitioner Wa-Wa-Yanda, Inc., a domestic corporation, 10 acres on the easterly portion of Captree Island for a term of 30 years. Captree Island lies in Great South Bay, north of the easterly end of the body of land whereon Jones Beach and other State recreational facilities are located. Captree Island has an area of approximately 600 acres and is almost entirely marsh or wetland. The 10 acres demised are actually part of a smaller island separated from the main portion of Captree Island by water, and the demised premises are located on upland, accessible by boat only and unusable in Winter.

The written lease, insofar as presently relevant, provided as follows:

" Said premises are to be used and occupied for the following purposes and for the following purposes only:

" For conducting a hotel on said premises, (the buildings constituting said hotel, bar and restaurant, already being on the premises and owned by the Tenant); for a yacht basin, dock, marina and associated purposes for the sale of gasoline and other related items in conjunction with navigation."

In addition, the lease provided that the tenant was to pay a specified annual rental, and that, in the event of war involving the United States and entailing gasoline rationing and restriction of travel, the tenant was to have the option either of paying 10% of the stipulated rent or of canceling the lease.

In 1953, petitioner entered into possession and used the demised premises in accordance with the purposes stated in the lease. Such use conformed to the uses permitted by the existing zoning regulations which placed the demised premises in a " business " district. In such a district the maintenance of a yacht basin and dock for the sale of gasoline and other necessary items in conjunction with navigation was authorized.

In 1954 a hurricane damaged some of the buildings and the dock in use on the demised premises. The petitioner removed debris and began a program of repairs and improvements which continued up to 1960. In this program, no new building was erected and no new gasoline tanks or pumps were installed. The renovations made were confined to replacements necessitated by the hurricane and entailed expenditures of $13,195.98.

In the interim, and while the lease continued in full force and effect, the town, in March, 1956, amended its Zoning Ordinance, effective October 1, 1956. The effect of the amendment was to change the classification of 5.3 acres of the premises here involved from a " business " to a " business 1 district." The amendment further prescribed that in a " business 1 district " only a retail business, the practice of a profession or the rendition of personal service (with some exceptions not now relevant) " will be permitted if the same is confined to the interior of the building."

At this time, some question as to the validity of petitioner's lease was raised by a title company. To remove any doubt as to the continued validity of the petitioner's lease, on September 18, 1956, 12 days before the effective date of the new zoning amendment, the Town Board adopted a further resolution. By the terms of this resolution, the Town Board expressly " ratified and approved " the lease and stated that the premises were to be used " for a hotel, restaurant, bar, yacht basin, dock, marina, associated purposes and dwellings ".

In 1960, the petitioner initiated a more extensive program to rebuild and further improve the premises " including the dock, basin, restaurant and bar." This improvement program included the installation of a new gas tank and pump for the storage and sale of gasoline as well as piping and electrical connections therefor at an expense of over $68,000.

Petitioner then made application for and received a permit for the operation of a public restaurant and bar. Its further application for a permit to install gasoline tanks, pedestal and other related equipment for the sale of gasoline was denied on February 6, 1961 by the appellant Building Inspector with the notation, " Gasoline Service Station not permitted in Bus. I Zone." That denial gave rise to the instant proceeding to compel him to issue the necessary permit for the installation and use of the gas tanks and related equipment.

On consent of the parties, the proceeding was heard and determined by the learned Special Referee. Upon the hearing, testimony was offered to show that petitioner's 1960 program had resulted in the completion of dock and marina facilities with the exception of the mechanisms requisite for the sale of gasoline, and that its expenditures in connection therewith were made in reliance upon its lease with the town, including particularly the provisions therein authorizing the sale of gasoline.

On behalf of the town, appellant contended that after the enactment of the 1956 zoning amendment the petitioner was no longer entitled to a permit for a marine gasoline service station

because the leased premises were no longer situated in a district currently zoned for such use. Appellant further contended that petitioner's lease was granted by the town in its private and proprietary capacity, as distinguished from its governmental capacity; that the 1956 zoning amendment was effected by the town while acting in its governmental capacity; and that while acting in the latter capacity the town could not exempt its own privately owned property from the burden of the amended Zoning Ordinance.

In his written opinion, the learned Special Referee stated that he had reached the conclusion that the petitioner was entitled to a mandamus order by virtue of three principal considerations. In sum, these turned upon the town's deprivation of petitioner's contractual rights as granted to it by the lease and the 1956 confirmatory resolution of the Town Board; the characterization of the 1956 zoning amendment as unreasonable, arbitrary and capricious because the new "business I" classification of the subject premises limited their use to activities confined to the interior of buildings; and the exercise by petitioner of a valid nonconforming use of the subject premises at the time the zoning amendment took effect.

Upon the present appeal, apart from the disputation on the three grounds upon which the learned Special Referee rested his decision in this proceeding, the parties tender another and more determinative issue — the impairment of a subsisting contract by a municipal ordinance. Appellant Building Inspector contends: (a) that every municipal contract, and particularly a lease made by a town in its proprietary character, is subject to the prospective exercise of its sovereign attribute of police power; and (b) that whether or not the 1956 zoning amendment amounted to unilateral cancellation of petitioner's 1952 lease, and whether such amendment entitled petitioner to maintain an action for damages against the town for breach of lease, are collateral matters for future litigation beyond the focal issue of the exercise of the sovereign's police power in the instant proceeding. Accordingly, we are presented with the issue as to whether a town, acting in its governmental capacity, may impair an existing contract of lease which it previously made in its proprietary character.

In determining this fundamental issue, it may be noted that, while the town demised the subject premises in its proprietary character and later enacted the zoning change in its governmental capacity, on both occasions it acted through its Town Board. As a matter of history, it appears that originally the dominion over Captree Island, as the property of the town, was exercised by

a separate Board of Trustees (*Town of Islip* v. *Estates of Havemeyer Point,* 224 N. Y. 449), and that subsequently, by legislative enactment, the trustees' functions were transferred to the Town Board which now exercises both proprietary and governmental functions on behalf of the town (L. 1916, ch. 131).

The resolution of the primary issue must be predicated upon the mandate of the Federal Constitution that, " No State shall * * * pass any * * * Law impairing the Obligation of Contracts " (U. S. Const., art. I, § 10). The general rule is that this mandate applies to a contract to which a State " or a subdivision thereof " is a party as well as to contracts between individuals (16 C. J. S., Constitutional Law, § 285, p. 1301, note 77). Within the constitutional intendment, a lease is ordinarily deemed a contract which may not be altered by legislative enactment (16A C. J. S., Constitutional Law, § 345, p. 15, note 72). However, when emergency arises and the public welfare requires, remedial legislation addressed to a legitimate end, which invokes reasonable and appropriate means to that end and which is enacted in the exercise of the State's police powers, may impair the obligation of a contract or lease, or may curtail the rights of private property (*Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571, 580, appeal dismissed 326 U. S. 696, 697; *New York State Thruway Auth.* v. *Ashley Motor Court,* 10 N Y 2d 151, 157–158). Statutes and ordinances which impair contractual obligations of contracts are not valid " merely because they purport to be enacted in the exercise of the police power; if in fact they are unreasonable, or otherwise beyond the scope of the police power, they fall within the contract clause and are unconstitutional and void " (16 C. J. S., Constitutional Law, § 281, p. 1291, note 97; *Fellows* v. *Seymour,* 171 Misc. 833, 834, revd. on other grounds 259 App. Div. 966 [4th Dept.]; *Willys Motors* v. *Northwest Kaiser-Willys,* 142 F. Supp. 469, 471 [U. S. Dist. Ct., Minnesota]; *Fox Film Corp.* v. *Trumbull,* 7 F. 2d 715, 719 [U. S. Dist. Ct., Conn.]). It is our view that as to the subject premises the zoning amendment here involved was beyond the scope of the town's police power. The existence of any emergency to justify its exercise has not been shown.

It has been held that a municipality, as tenant under a contract of lease, may invoke the benefits flowing from the Emergency Business Space Rent Control Law, adopted by the State, without violating the Federal constitutional prohibition against impairment of contract (*Matter of Court Sq. Bldg.* v. *City of New York,* 298 N. Y. 380, 385). Similarly, and as a bar to its performance of a prior contract, a municipality may invoke a State statute making such contract illegal, in which case the

plaintiff is left to his remedy at law for damages (*Bowen* v. *City of Schenectady*, 136 Misc. 307, 311, affd. 231 App. Div. 779).

The converse situation, present at bar, where the municipality seeks escape from the obligation of a contract of lease by virtue of its own subsequent legislative enactment poses novel questions of law, not squarely decided in this State. A kindred case is one where the City of New York leased to a tenant a parcel of vacant land with authorization to the tenant to erect a public garage thereon, and where, later, the city's Commissioner of Plant and Structures refused to allow the construction. The tenant, although remaining in possession, refused to pay any rent. It was held that the city could recover on its complaint for rent, but that the tenant might recover its damages, if any, by way of a counterclaim (*City of New York* v. *Pike Realty Corp.*, 247 N. Y. 245). That case, although invoked by petitioner for the proposition that " the city and its officials  *  *  *  are one," is of no aid, since there the alleged breach of the proprietary lease was not occasioned by local legislation as it is in the instant case.

The problem presented, however, is not without guiding principle. It has been squarely held that the constitutional safeguard against the impairment of contracts operates to bar " a state from unilaterally abrogating contracts which it has entered into " (*Jones* v. *Burns*, 138 Mont. 268, 292). This latter principle is applicable " particularly with respect to contracts previously entered into by the state in its proprietary capacity " (16 C. J. S., Constitutional Law, § 285, pp. 1301–1302). Such principle has served as the basis of determination in a case where the State as owner of tidelands had plotted the land by block and lot numbers, sold the property by reference to a map delineating public streets, and thereafter sought to revoke the dedication of a portion of one such street (*McGinn* v. *State Bd. of Harbor Commrs.*, 113 Cal. App. 695). In that case, it was held that the State could not revoke the dedication of this portion of a street, because it could not impair the obligation of its contract entered into in its proprietary capacity.

In street railway cases, in which it was held that the Public Utilities Commission had no authority to change rates of fare fixed by the terms of a contract made between a public utility and a municipality, the Supreme Court of Ohio observed that the municipality had acted in a " matter of proprietary rights " and cited with approval a number of precedents (summarized in 16 C. J. S., Constitutional Law, § 309, p. 1332) as supporting the proposition stated in such text, namely, that " a contract concerning proprietary rights  *  *  *  made by a municipal-

ity in the exercise of power clearly conferred, is within the constitutional protection, and the police power cannot be invoked to abrogate or impair it " (*Interurban Ry. & Term. Co.* v. *Public Utilities Comm.,* 98 Ohio St. 287; *Mahoning & Shenango Ry. & Light Co.* v. *Public Utilities Comm.,* 98 Ohio St. 303; *Toledo etc. Traction Co.* v. *Public Utilities Comm.,* 98 Ohio St. 305).

In applying the foregoing authorities to the proceeding at bar, it seems clear that since the Town of Islip, in proprietary capacity, leased the subject premises to petitioner it cannot now be heard to assert that subsequently, and in its governmental capacity, it could alter the lease by zoning enactment.

With respect to the inhibitory effect upon a municipality of its own zoning regulations, it has been definitively stated that the municipality " is not subject to [such] zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary, activities " (*Nehrbas* v. *Incorporated Vil. of Lloyd Harbor,* 2 N Y 2d 190, 193).

In the *Nehrbas* case (*supra*) it was held that a municipality, in the exercise of its governmental function, is free from the bar of its own zoning prohibition against the erection of municipal offices and a garage in a residential district. In like vein, this court has held that the zoning regulations adopted by the Town of Islip, the municipality here involved, did not preclude the town from establishing in a residential area a new garbage incinerator plant (*Kohilakis* v. *Harwood,* 10 A D 2d 950, motion for leave to appeal denied 9 N Y 2d 612; see, also, *Kohilakis* v. *Harwood,* 15 A D 2d 795).

In our opinion, these cases do not support appellant's contention that lands owned by the town in a proprietary capacity are subject to its own zoning ordinances, since the *Nehrbas* case implicitly rejected that contention. Nor is it sustained by the only case cited in its support (*O'Brien* v. *Town of Greenburgh,* 239 App. Div. 555, 557–558, affd. 266 N. Y. 582). The *O'Brien* case held that the defendant town's construction of a garbage incinerator upon its own land in a district zoned for residential use, was the exercise by it of a corporate or proprietary function rather than the exercise of a governmental function, and that in the exercise of its corporate or proprietary functions the town was " bound equally with all other persons, whether individual or corporate, by the terms of its own [zoning] ordinance " which barred incinerators in a residential area (*O'Brien* v. *Town of Greenburgh, supra,* pp. 557–558). The *O'Brien* case, however, is of dubious authority since the Court of Appeals in the later *Nehrbas* case (*supra*) pointed out that its affirmance in *O'Brien* was upon grounds unrelated to the question of whether the

defendant Town of Greenburgh was acting in a governmental or corporate capacity (*Nehrbas* v. *Incorporated Vil. of Lloyd Harbor,* 2 N Y 2d 190, 195, *supra*).

Moreover, the context of the *O'Brien* case (*supra*) makes plain that it bears no relationship to the case at bar in that the zoning regulation there involved had no reference to a prior lease made by the Town of Greenburgh in a proprietary capacity. In other words, *O'Brien* turned merely on the question of whether a garbage plant represented a governmental or proprietary function of a municipality, and, insofar as this court held that such activity was a proprietary function, its determination of that sole issue has been rejected by the *Nehrbas* and *Kohilakis* cases (*supra*). The *Nehrbas* case likewise fails to support the appellant's present position, since the Town of Islip is not seeking to put gasoline pumps on the subject premises but is pursuing the opposite tactic of attempting to prevent the petitioner, its tenant, from so doing, although for the tenure of the lease its tenant may be considered to be standing in the town's shoes.

Accordingly, we hold that the town, by reason of the impairment of contract clause in the Federal Constitution, is barred from abrogating, through the medium of a zoning amendment which it adopted in its governmental function, a prior subsisting lease which it made in its proprietary character (*Jones* v. *Burns, supra*; *McGinn* v. *State Bd. of Harbor Commrs., supra*; *Interurban Ry. & Term. Co.* v. *Public Utilities Comm., supra*; *Mahoning & Shenango Ry. & Light Co.* v. *Public Utilities Comm., supra*; *Toledo etc. Traction Co.* v. *Public Utilities Comm., supra*; 16 C. J. S., Constitutional Law, § 285, pp. 1301–1302). This consideration is fortified by the dictates of public policy that, ' Courts should not be astute to enable a municipal corporation to disavow its just commitments or obligations, or to conduct itself respecting them in a manner violative of fair dealing, which they would not sanction were natural persons the parties involved '' (*Lowe* v. *City of New York,* 240 App. Div. 484, 489, affd. 265 N. Y. 583).

It is our further opinion that if we evaluate this case solely within the confines of zoning decisions, as did the learned Special Referee, the same result for affirmance ensues. In any event, under all the circumstances here present, the prohibition of the sale of gasoline — an integral and indispensable part of the leasehold use of the subject premises — precludes the use of the property for the purpose for which the town and petitioner agreed it was reasonably adapted, and effects a confiscation of petitioner's leasehold interest therein since '' the greater part of its value is destroyed '' (*Vernon Park Realty* v. *City of Mount*

*Vernon,* 307 N. Y. 493, 498–499; *Dowsey* v. *Village of Kensington,* 257 N. Y. 221; *Hyde* v. *Incorporated Vil. of Baxter Estates,* 3 N Y 2d 873; *Rockdale Constr. Corp.* v. *Incorporated Vil. of Cedarhurst,* 301 N. Y. 519; *Mardine Realty Co.* v. *Village of Dobbs Ferry,* 1 N Y 2d 902; *Attoram Realty Corp.* v. *Town of Greenburgh,* 8 A D 2d 937). In the latter connection, the factors of limitation of use and destruction of value are in the instant case evidenced by the lease itself which provided that should the sale of gasoline be prohibited, the rent might be reduced by 90%.

Whether this case turns upon the basic issue relating to the Federal Constitution's impairment of contract clause or upon the issue of the confiscatory effect of the 1956 zoning amendment upon the subject premises, the order under review should be affirmed, with costs.

UGHETTA, Acting P. J., CHRIST, BRENNAN and HOPKINS, JJ., concur.

Order affirmed, with costs.