[730 NYS2d 95]

WESTCHESTER CREEK CORPORATION, Petitioner, v NEW YORK CITY SCHOOL CONSTRUCTION AUTHORITY, Respondent.

First Department, September 13, 2001

## APPEARANCES OF COUNSEL

*Gil Feder* of counsel (*Donald N. David* and *Michele C. Cerullo* on the brief; *Fischbein Badillo Wagner Harding*, attorneys), for petitioner.

*James G. Greilsheimer* of counsel (*Shari B. Kibel* and *Eric Webster Nerenberg* on the brief; *Blank Rome Tenzer Greenblatt, L. L. P.,* attorneys), for respondent.

## OPINION OF THE COURT

RUBIN, J.

At issue in this proceeding is whether property acquired for public use in connection with an urban development project can subsequently be condemned for use as a public school. The parties have cited no authority directly on point, and this Court entertains the matter as a case of first impression.

Petitioner Westchester Creek Corporation is the tenant of a portion of the Zerega Avenue Urban Renewal Area, which is zoned M1-2 and devoted to industrial, manufacturing and commercial purposes under an Urban Renewal Plan approved by the Board of Estimate on September 16, 1968. Petitioner is lessee of seven parcels in the Urban Renewal Area under a master lease with the City of New York, the term of which extends for up to 90 years, including renewal periods. The premises at issue, described as Tax Block 3834, Lot 70 and designated 1301-59 Zerega Avenue, Bronx, New York, were severed from the master lease on May 29, 1987 and are subject to a severance lease. The premises comprise 157,071 square feet of undeveloped land, improved only by installation of portions of a drainage system.

Respondent New York City School Construction Authority proposes to appropriate Lot 70 under the power of eminent domain for use as a public school. To that end, respondent held public hearings (Public Authorities Law §§ 1731, 1732) and obtained the approval of Community School Board, District 11 and Community Board No. 10, the City Council and the Mayor. Petitioner submitted a position paper in opposition to the use of the premises as a school during the written comment period following the public hearing held pursuant to Eminent Domain Procedure Law article 2. On March 23, 2001, the president of the School Construction Authority issued a determination to acquire the property by eminent domain. This proceeding was duly commenced by petition verified April 25, 2001.

Respondent notes that the proposed school, a 991-seat elementary/intermediate school to be known as P.S./I.S. 194X, is needed to overcome severe overcrowding in Community School District 11. It is designed to accommodate students who would otherwise be assigned to schools that, as of the 1998-1999 school year, were operating in excess of capacity: P.S. 106 at 118%, P.S. 83 at 123% and I.S. 127 at 104%. In all, enrollment at these facilities exceeded rated capacity by 422 students.

Westchester Creek Corporation brings this petition pursuant to Eminent Domain Procedure Law § 207, seeking to annul the determination by respondent School Construction Authority. It is petitioner's contention that, having leased the property designated as Lot 70 for the purpose of an urban renewal project, it cannot be applied to an alternative public use as a school.

The grounds for judicial review are limited to whether the exercise of eminent domain complies with procedural and

constitutional requirements and whether the acquisition is for a public use and within the condemnor's statutory authority (EDPL 207 [C]). Petitioner raises no basis for annulment with respect to two of the four statutory grounds. It does not maintain that respondent's determination was in violation of statutory procedures pursuant to paragraph (3) of the statute; nor does petitioner suggest that use of the subject premises as an elementary or secondary school will fail to promote a public purpose pursuant to paragraph (4). Westchester Creek maintains that the proposed acquisition exceeds respondent's statutory authority under paragraph (2) and that, pursuant to paragraph (1), condemnation will violate petitioner's due process rights under the Fourteenth Amendment to the United States Constitution and will impair the validity of its lease in contravention of the Contract Clause (US Const, art I, § 10).

The New York City School Construction Authority Act (L 1988, ch 738, § 14 [enacting Public Authorities Law § 1725 *et seq.*]) confers upon the School Construction Authority broad powers with which to acquire property, including the power of condemnation (Public Authorities Law § 1728 [6]). Petitioner does not argue that any provision in the Public Authorities Law precludes the Authority from condemning Lot 70, the subject parcel, for use as a public school. Rather, it argues that provisions of the General Municipal Law and the Private Housing Finance Law suggest that the powers of condemnation given for urban renewal "prevail over all other general, special and local law" (Private Housing Finance Law § 215 [3]). However, Public Authorities Law § 1747 contains a similar provision in favor of the School Construction Authority, reciting:

> "Insofar as the provisions of this title are inconsistent with the provisions of any other law, general, special or local or of the city charter or any local law, ordinance or resolution of the city, the provision of this title shall be controlling, provided that nothing contained in this section shall be held to supplement or otherwise expand the powers or duties of the authority otherwise set forth in this title."

As petitioner correctly observes, the courts recognize that urban development is considered a "superior use" to retention of property in the hands of a private owner (*Stuyvesant Hous. Corp. v Stuyvesant Town Corp.*, 183 Misc 662, 665; *see also, Matter of City of Rochester v Rochester Gas & Elec. Corp.*, 54

Misc 2d 855, 857). However, petitioner cites nothing in the respective statutes suggesting that school construction is any less "superior" a public use than urban redevelopment.

Petitioner appropriately directs this Court's attention to the doctrine of prior public use which, petitioner contends, precludes the acquisition of property dedicated to one particular public use for the purpose of applying it to yet another public use. In opposition, respondent observes that Westchester Creek Corporation does not possess the power of eminent domain. Therefore, it maintains, the doctrine has no application under the circumstances of this case.

Respondent misreads *Matter of Board of Educ. v Pace Coll.* (27 AD2d 87), upon which it relies. There, the Appellate Division, Second Department, held that while land held by Pace College was utilized to confer a benefit on the public generally through the provision of educational services, the institution did not possess the power of eminent domain. Thus, the question of the priority to be accorded to two entities, each of which seeks to devote the property to public use, did not arise. What is significant, however, is not that the college itself lacked the power of condemnation, but that the college did not hold the property pursuant to "a delegated, general power of eminent domain" (*supra*, at 90). Here, by contrast, there is no question that Westchester Creek Corporation holds the subject premises by delegation of the power of eminent domain possessed by the City of New York and conferred upon petitioner as a redeveloper under an approved Urban Renewal Plan. Thus, it is *Matter of Board of Educ. v Pace Coll. (supra)* that is inapposite and not the application of the doctrine of prior public use.

As the Court of Appeals stated in *New York Cent. & Hudson Riv. R. R. Co. v City of Buffalo* (200 NY 113, 117-118):

> "Lands already taken by condemnation or acquired by purchase for public use should not by taken for another public use unless the reasons therefor are special, unusual and peculiar. For this reason it has been frequently held that where lands have once been taken or acquired for public use, they cannot be taken for another public use, at least if such other public use would interfere with or destroy the public use first acquired, unless the intention of the legislature that such lands should be so taken is shown by express terms or necessary implication."

It is highly significant that the Legislature recognized the "deplorable physical condition" of elementary and secondary schools in the City of New York, many of which are

> "overcrowded, unsafe, unhealthy and unusable. The physical deterioration of the schools is a serious impediment to learning and teaching. If the quality of education in New York city is to be improved, the city's schools must be modernized, expanded and restored to a state of good repair." (New York City School Construction Authority Act, L 1988, ch 738, § 1.)

The School Construction Authority was created to expedite the modernization of the public school system's physical plant.

> "The legislature finds that extraordinary measures must be taken to reverse this deterioration of educational facilities. Since the need to improve the efficiency, economics and quality of the process by which the city's schools are renovated and constructed is immediate and long-term, a new public authority should be established to manage the acquisition, design, construction and major rehabilitation of New York city schools. In order to ensure the effectiveness of the new authority, it should be exempt from local laws and regulations concerning the provision of school buildings." (*Id.*)

Moreover, the language of the enactment reflects the public policy underlying it: "The legislature further finds and declares that repairing and replacing New York city's schools must begin immediately and must proceed without obstruction. *There can be no higher priority* than creating a physical environment in the schools that fosters rather than impedes, the education of our children" (*id.* [emphasis added]). To this end, the authority is vested with broad powers, among them: "To acquire real and personal property, or any interest therein, by any method, including but not limited to purchase or condemnation, for the purpose of constructing * * * or otherwise providing for educational facilities for the city board [of education]" (Public Authorities Law § 1728 [6]).

The thrust of petitioner's argument on appeal is that the City, having devoted Lot 70 to redevelopment as commercial property, is without authority to devote the premises to a different public purpose. In support of this proposition, it relies on *Matter of E & J Holding Corp. v Noto* (126 AD2d 641), in

which the Town of Babylon was held to be without power to close a section of a street in order to join two parcels of town property to permit the erection of a resource recovery facility. Although the decision sets forth the general language of *New York Cent. & Hudson Riv. R. R. Co. v City of Buffalo* (*supra*, at 117-118), quoted above, the outcome rests on the narrower ground that, "to close a town road, the town * * * could not rely upon its general power of eminent domain" (*E & J Holding Corp. v Noto, supra*, at 643). The Court went on to point out that the power to discontinue streets is the prerogative of the State and while "this power may be delegated by the Legislature to a subordinate governmental agency * * * [i]t is imperative that statutes enabling such subordinate governmental agencies to discontinue roadways be adhered to when terminating the public's easement over such a roadway" (*id.* [citations omitted]; *see also, Matter of County of Suffolk v Pinelawn Cemetery*, 130 AD2d 575 [cemetery's consent required to construct road through its property]).

■ While respondent is similarly precluded from exercising its power of eminent domain to "condemn property dedicated to use, used or mapped as a city street" as well as "any other property owned by, or subject to any interest therein, of the city of New York" (Public Authorities Law § 1728 [6]), Public Authorities Law § 1729 (2) specifically provides for the transfer of City property to the School Construction Authority. The severance lease under which petitioner occupies the premises expressly provides for the exercise of the power of eminent domain against the premises (article XVI ["Condemnation"]), in which event, "The award of the land shall belong solely and only to the Lessor." The severance lease affords the City, as lessor, the ability to avoid further liability under the instrument upon condemnation of the property. Meanwhile, Public Authorities Law § 1729 confers the power to transfer property that is otherwise subject to an interest of the City to the School Construction Authority. Finally, respondent is empowered: "To do any and all things necessary or convenient to carry out and exercise the powers given and granted by this section" (Public Authorities Law § 1728 [17]). Therefore, where the City of New York indicates its acquiescence, this Court perceives no statutory impediment to the condemnation of City property by respondent School Construction Authority. Petitioner has thus failed to establish that the proposed acquisition is in violation of petitioner's right to due process or beyond the scope of respondent's statutory jurisdiction (EDPL 207 [C] [1], [2]).

▮ As to the countervailing public interests to be served, this Court finds that the acquisition of land for construction of a public school is a use that is "special, unusual and peculiar" within the contemplation of the New York City School Construction Authority Act (*New York Cent. & Hudson Riv. R. R. Co. v City of Buffalo, supra*, at 117). Therefore, the prior public use doctrine does not bar condemnation of the subject premises by respondent School Construction Authority.

▮ As a final argument, petitioner asserts that its status as lessee under an urban renewal plan affords it constitutional protection against the condemnation of its interest in the subject Lot 70 for use as a public school (EDPL 207 [C] [1]). Article XVIII, § 1 of the New York State Constitution expedites the appropriation of private property by governmental agencies for the purpose of undertaking urban renewal projects, specifically for the provision of "low rent housing and nursing home accommodations for persons of low income as defined by law, or for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas, or for both such purposes, and for recreational and other facilities incidental or appurtenant thereto." To the extent article XVIII encompasses a commercial project, it does not go so far as to confer any protected status on the redeveloper. Furthermore, petitioner does not explain why the constitutional authority to exercise the power of eminent domain in pursuit of one social purpose (NY Const, art XVIII, § 9) should operate to preclude its exercise in aid of another, declared by the Legislature to be the highest priority. In any event, the provision for "incidental or appurtenant" facilities is sufficiently broad to include a neighborhood school within the scope of an urban renewal project.

▮ Finally, petitioner argues that condemnation by respondent would impair its lease with the City in violation of the Contract Clause (US Const, art I, § 10). Petitioner maintains that it has "vested rights" in the premises, having "commenced work of a substantial character on the property, made substantial expenditures, or incurred substantial obligations" with respect thereto (quoting *Matter of Lefrak Forest Hills Corp. v Galvin*, 32 NY2d 796, 804 [Jasen, J., dissenting], *cert denied sub nom. Baum v Lefrak Forest Hills Corp.*, 414 US 1004).

There are two shortcomings in this argument. As a general proposition, a governmental entity "which has granted a lease on land owned in its proprietary capacity, may [not] thereafter, by governmental action * * * curtail the tenant's use of the

demised premises as authorized by the leasehold agreement" (*Matter of Wa-Wa-Yanda, Inc. v Dickerson*, 18 AD2d 251, 251-252). Accepting, for the sake of argument, petitioner's contention that partial installation of a drainage system qualifies as "work of a substantial character" to support the assertion of "vested rights" (*Matter of Lefrak Forest Hills v Galvin, supra,* at 804), it is significant that the "governmental action" at issue in this matter was not undertaken by the City, in its governmental capacity, to recover property it leased to petitioner in its proprietary capacity. The condemnor, respondent School Construction Authority, is a public benefit corporation created by the Legislature and is an independent agency of the State, not the City. It holds title to property in its own name, which premises are exempt from City taxes and assessments (Public Authorities Law § 1728 [6]; § 1742).

As a second point, respondent readily concedes that its exercise of the power of eminent domain is subject to the obligation to pay just compensation to the condemnee (*Great Atl. & Pac. Tea Co. v State of New York,* 22 NY2d 75, 84 ["A lease is an interest in property which is compensable if the property which is subject to a lease is condemned."]). In determining compensation, "the value of a lease, even though nominal, may be determined not only by the economic rent advantage but also by factors such as the length of the term and the conditions of the lease, by economic conditions and by other material considerations which would enter the mind of a prospective purchaser of the term" (*Irv-Ceil Realty Corp. v State of New York,* 43 AD2d 775, 776). Thus, condemnation is hardly tantamount to destruction of the value of a leasehold by a municipal lessor through the enactment of zoning regulations to prohibit the current use of the demised premises (*Matter of Wa-Wa-Yanda, Inc. v Dickerson, supra*). This Court has gone so far as to uphold the condemnation of leased property by the lessor itself, or a wholly owned subsidiary of the lessor, in aid of a project of benefit to the public (*Gourmet Mgt. v Metropolitan Transp. Auth.,* 163 AD2d 184). Furthermore, as respondent points out, the exercise of powers that are inherent in and essential to the effective operation of government, such as eminent domain, cannot be contracted away and are not subject to the Contract Clause (*People v Adirondack Ry. Co.,* 160 NY 225, 236-237, *affd* 176 US 335).

Accordingly, the petition seeking to annul the determination of respondent New York City School Construction Authority dated March 23, 2001, which approved the appropriation of the

premises described as Tax Block 3834, Lot 70 and designated 1301-59 Zerega Avenue, Bronx, New York, should be denied, the determination confirmed and the proceeding originally brought to this Court pursuant to Eminent Domain Procedure Law § 207 dismissed, without costs.

NARDELLI, J. P., TOM, MAZZARELLI and MARLOW, JJ., concur.

Petition seeking to annul the determination of respondent New York City School Construction Authority dated March 23, 2001, denied, the determination confirmed and the proceeding originally brought to this Court pursuant to Eminent Domain Procedure Law § 207 dismissed, without costs.