[750 NYS2d 212]

In the Matter of KAUFMANN'S CAROUSEL, INC., et al., Petitioners, v CITY OF SYRACUSE INDUSTRIAL DEVELOPMENT AGENCY et al., Respondents.

Fourth Department, November 15, 2002

## APPEARANCES OF COUNSEL

*Harris Beach LLP,* Pittsford (*David E. Martin* of counsel), for petitioners.

*Hiscock Barclay Saperston & Day,* Buffalo (*Mark R. McNamara* of counsel), for City of Syracuse Industrial Development Agency, respondent.

*Rosenberg & Estis, P.C.,* New York City (*Gary M. Rosenberg* of counsel), for Carousel Center Company, L.P., respondent.

## OPINION OF THE COURT

PIGOTT, JR., P.J.

Petitioners Kaufmann's Carousel, Inc. (Kaufmann's) and Lord & Taylor Carousel, Inc. (Lord & Taylor) jointly, and petitioner J.C. Penney Corporation, Inc. (JCPenney) (collectively, Carousel Center petitioners) commenced these original proceedings pursuant to EDPL 207 challenging the findings and determination of respondent City of Syracuse Industrial Development Agency (SIDA) insofar as SIDA authorized condemnation of certain interests that they have as tenants pursuant to leases and other agreements that would restrict the use of land both in and outside of the Carousel Center shopping mall (Carousel Center interests). Each of those petitioners operates a major retail department store in the shopping mall as an anchor tenant. Petitioner 843 Hiawatha Boulevard, LLC (Hiawatha) also commenced an original

proceeding pursuant to EDPL 207 challenging the findings and determination of SIDA insofar as SIDA authorized condemnation of certain real property interests of Hiawatha in order to permit construction of additional roadway and related infrastructure improvements along the Hiawatha Boulevard travel corridor. The stated purpose of the proposed taking is to expand the Carousel Center shopping mall and integrate it with the nearby Carousel Landing shopping mall into a single major shopping center/tourist destination known as "DestiNY USA."

The Carousel Center petitioners contend that SIDA may not exercise its powers of eminent domain to acquire their leasehold and other intangible property rights without also acquiring the underlying real property interests, nor may SIDA curtail its obligations under its proprietary agreements with the Carousel Center petitioners or take property already devoted to a public use. They further contend that SIDA's attempt to alter or abrogate the provisions of their leases and other related agreements violates the Contract Clause of the United States Constitution. The Carousel Center petitioners also attack the validity of the condemnation in various other respects, contending that the determination did not comply with the procedural and substantive requirements of the EDPL and the State Environmental Quality Review Act ([SEQRA] ECL art 8). Hiawatha, on its part, contends that the stated purposes of the proposed condemnation are merely a pretext to acquire Hiawatha's real property in order to construct a golf course.

*I*

### The History Of The DestiNY USA Project

The proposed condemnation of petitioners' property interests is the latest in a series of actions dating back to 1987, when SIDA exercised its powers of eminent domain to acquire approximately 800 acres of land along Onondaga Lake in the City of Syracuse (City) for the purpose of developing a retail shopping mall to be known as Carousel Center. At that time, SIDA entered into a preferred developer agreement with the Pyramid Companies (Pyramid), a partnership engaged in the development of retail commercial properties. In 1990 Pyramid completed construction of Carousel Center in the northern portion of the lakefront area. In 1990 and 1991, the Carousel Center petitioners entered into long-term lease agreements with Pyramid to operate retail department stores as anchor tenants at Carousel Center.

On October 12, 1995, SIDA issued findings and a determination pursuant to EDPL 204 to acquire by condemnation approximately 55.7 acres of real property owned by various oil companies along the south shore of Onondaga Lake in the "Oil City" area, for the proposed development by Pyramid of another retail shopping mall to be known as Carousel Landing. The oil companies challenged SIDA's determinations in original proceedings pursuant to EDPL 207, and this Court confirmed the determination in each proceeding and dismissed the petitions therein (*Mobil Oil Corp. v City of Syracuse Indus. Dev. Agency*, 224 AD2d 15, *appeal dismissed* 89 NY2d 860, *lv denied* 89 NY2d 811).

In 1997 Pyramid made a proposal to integrate Carousel Landing with Carousel Center and to expand the resulting mall to approximately three times its present size. That plan has come to be known as the DestiNY USA project, which is purported to be one of the largest economic development projects in the history of the State of New York. SIDA initiated procedures under the EDPL to acquire certain property interests for DestiNY USA.

On April 30, 2002, SIDA conducted a public hearing pursuant to EDPL article 2. At the hearing, SIDA's attorney noted that SIDA had determined that the proposed expansion of the Carousel Center constituted a project that would serve public purposes, "including, without limitation, advancing job opportunities, general prosperity and public welfare of the People of the State of New York and the City of Syracuse and * * * advancing economic development and promoting tourism." He then identified "two general categories" of real property interests sought to be acquired by the condemnation. The first category, which he referred to as "right-of-way interests," are

> "real property interests needed to permit construction, traffic infrastructure improvements, either identified as mitigation measures in connection with the prior * * * [SEQRA] review of the DestiNY USA project, and/or to allow construction of additional roadway and related infrastructure improvements designed to improve pedestrian access between the DestiNY USA project and surrounding areas, as well as to improve the * * * aesthetic conditions along the Bear Street and Hiawatha Boulevard travel corridors in support of the DestiNY USA project."

The second category of real property interests, which SIDA's

attorney referred to as the "Carousel Center interests," "may" include:

> "among other things, interests of tenants pursuant to leases or other agreements that may restrict the use of land outside the existing mall building or in the Carousel Center site, i.e., new building areas, parking, landscaping, et cetera, interests which may restrict use of common areas within the Carousel Center mall building, certain leasehold interests within the Carousel Center building which are needed to permit modification of interior areas, interests creating restrictions regarding visibility and signage interests restricting the name of the project, and any other applicable interests."

SIDA then issued its "Determination and Findings Pursuant to EDPL Section 204," dated April 30, 2002, finding that

> "the acquisition of the Right-Of-Way Interests and Carousel Center Interests will help achieve the public purposes, uses and benefits expected to be derived from the DestiNY USA Project, as previously determined by SIDA * * * and will independently help achieve the public purposes, benefits and uses associated with the potential redevelopment of the Syracuse Lakefront."

SIDA determined that numerous public purposes would be served, including advancing the general prosperity and economic welfare of both the residents of the City and the general population of the State, promoting tourism and attracting visitors from outside the economic development region, ameliorating economic deterioration and promoting employment in the City, and increasing the property tax base as well as sales tax revenues.

## II

### The Proceedings Commenced In This Court

Thereafter, Kaufmann's and Lord & Taylor commenced an original proceeding pursuant to EDPL 207 challenging SIDA's findings and determination. In their petition, they allege that they own leasehold interests and operate major anchor department stores in Carousel Center. They further allege that, as a necessary inducement to secure their presence in the mall, Pyramid entered into a series of agreements with them

"designed to protect both their competitive position and their investment in the mall." Those agreements include leases and other agreements specifying the rights and interests of Kaufmann's and Lord & Taylor in the operation and future development of the Carousel Center. They also entered into a Construction, Operation and Reciprocal Easement Agreement with Pyramid, which granted them special rights in certain common areas, including the parking area immediately surrounding their department stores. In addition, they entered into Allocable Share Agreements and a Joint Improvement Agreement, which granted them additional substantive and collateral rights and interests in the Carousel Center. Those additional substantive and collateral rights and interests include rights and interests with respect to: (1) changes in the layout of Carousel Center, including its design and configuration, and the addition or withdrawal of any property comprising Carousel Center; (2) the parking and traffic circulation at Carousel Center; (3) the easements in and through Carousel Center, including those for parking, use of the common areas, access and ring roads, utility facilities, and accent and exterior lighting; (4) the design, phasing, and timing of all construction of improvements at Carousel Center; (5) the obligations of the other department stores in Carousel Center, the permitted and prohibited uses of the property, and the leasing of the available retail store space; and (6) the operation and management of Carousel Center under the Carousel Center name. Kaufmann's and Lord & Taylor further allege that they had written agreements with SIDA, including Non-Disturbance and Attornment Agreements, wherein SIDA agreed that it would "not disturb or in any way adversely affect" the rights of Kaufmann's and Lord & Taylor under their respective leases. SIDA also entered into a Consent, Joinder and Subordination Agreement wherein SIDA agreed to subordinate its interest in Carousel Center to the terms, covenants and conditions of the Construction, Operation and Reciprocal Easement Agreement, the Allocable Share Agreements and the Joint Improvement Agreement between Pyramid, Kaufmann's and Lord & Taylor.

Kaufmann's and Lord & Taylor allege that

"SIDA's proposed taking would leave Kaufmann's and Lord & Taylor with materially different contractual rights than they bargained for as a condition to their decision to enter Carousel Center * * * and could have a deleterious affect [sic] on the viability and operation of their stores both during

and after the construction of the proposed improvements * * *."

Kaufmann's and Lord & Taylor challenge SIDA's determination on numerous procedural and substantive grounds.

JCPenney also commenced an original proceeding pursuant to EDPL 207, similarly challenging the findings and determination of SIDA. In its petition, JCPenney asserts:

"This special proceeding raises important questions of first impression. Under the guise of condemning real property associated with the Carousel Center Mall located in Syracuse, New York (the 'Mall') (a curious notion since the real property underlying the Mall is already owned in fee by SIDA), SIDA's April 30th Resolution and Determination and Findings authorize the abrogation of various contractual obligations owed by The Pyramid Companies and Carousel Center Company, L.P. (referred to herein collectively as 'Pyramid') to JCPenney. This action by SIDA is intended to, and would if confirmed, relieve Pyramid of its contractual obligation to consult with JCPenney and to obtain JCPenney's consent to any alteration or modification of the Carousel Center Mall. Such an action would be, effectively, a unilateral reformation of JCPenney's contract with Pyramid. The purported condemnation by SIDA is entirely for the private benefit of Pyramid, allowing Pyramid to proceed with modifications to the Mall without consideration of the rights of the current Mall occupants. JCPenney is left without the contractual protections it had carefully negotiated in order to protect its substantial investments in its store located at the Mall."

JCPenney similarly challenges SIDA's determination on various procedural and substantive grounds.

Hiawatha, which owns real property in the area of the proposed expansion, also commenced an original proceeding pursuant to EDPL 207 challenging SIDA's findings and determination. According to Hiawatha, although one alleged purpose of the proposed condemnation was to obtain a right-of-way on Hiawatha Boulevard for purposes of traffic control and other pedestrian improvements in connection with the expansion project, "it appears the proposed taking of [Hiawatha's] property is for the purpose of constructing a golf course along Hiawatha Boulevard west of the actual project expansion." As

an exhibit to its petition, Hiawatha appended a copy of an article from a city newspaper, dated May 15, 2002, headlined "Pyramid launches golf course for Destiny."

Respondents submitted answers in which they, inter alia, denied petitioners' contentions that SIDA is without authority to condemn petitioners' leasehold and real property interests.

## III

### Petitioners' Challenges Under EDPL 207

Preliminarily, we note that the scope of review of a proposed condemnation is limited by EDPL 207 "to whether the proceeding was constitutional or within the agency's statutory jurisdiction; whether the agency made its determination and findings in accordance with the procedures set forth in [EDPL] article 2; and whether a public use, benefit or purpose will be served by the proposed acquisition * * *. If an adequate basis for a determination is shown and the objector cannot show that the determination was without foundation, the agency's determination should be confirmed" (*Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 720 [internal quotation marks omitted]; *see Sun Co. v City of Syracuse Indus. Dev. Agency*, 209 AD2d 34, 40, *appeal dismissed* 86 NY2d 776).

Initially, JCPenney contends that the so-called Carousel Center interests are not interests in real property, but rather are contract rights, which SIDA has no authority to acquire by eminent domain. Respondents, on the other hand, contend that the Carousel Center interests are leasehold rights, which constitute interests in real property that SIDA may acquire under its power of eminent domain. We agree with respondents.

SIDA's authority to acquire property is derived from General Municipal Law § 858 (4), which provides that a public benefit corporation established as an industrial development agency under article 18-A of the General Municipal Law may "acquire by purchase, grant, lease, gift, pursuant to the provisions of the eminent domain procedure law * * * real property *or rights or easements therein* necessary for its corporate purposes" (emphasis added; *see Sun Co.*, 209 AD2d at 40). In addition, EDPL 103 (F) defines real property as including "all land and improvements, * * * all easements and hereditaments, corporeal or incorporeal, *and every estate, interest and right, legal or equitable, in lands* or water, and right, interest, privilege, easement and franchise relating to the same, including terms for years and liens by way of mortgage or otherwise"

(emphasis added). Those statutes, therefore, are broad enough to encompass an interest in real property such as a leasehold interest. Indeed, the Court of Appeals has stated that "[a] lease is an interest in property which is compensable if the property which is subject to a lease is condemned" (*Great Atl. & Pac. Tea Co. v State of New York*, 22 NY2d 75, 84). In addition, courts have upheld the condemnation of leased property in aid of a project of benefit to the public (*see Westchester Cr. Corp. v New York City School Constr. Auth.*, 286 AD2d 154, 161, *affd* 98 NY2d 298; *Gourmet Mgt. v Metropolitan Transp. Auth.*, 163 AD2d 184). Thus, we conclude that the leasehold interests constitute interests in real property that may be acquired by SIDA under its power of eminent domain.

We note, however, that SIDA is not attempting to acquire the entire leasehold interests of the anchor tenants, but rather seeks to acquire only those portions of the leasehold interests that would in some way impair or impede the DestiNY USA project. Those leasehold interests, characterized by JCPenney as mere contract rights, are derived from the lease provision that buildings, improvements and common facilities "shall remain substantially as shown on [an exhibit to the lease] during the term of this lease and that Landlord will not expand any existing building or erect any new building except within the areas shown" and from the lease provision that the "name of the Shopping Center * * * shall not be changed during the term of th[e] lease without Tenant's consent having been first obtained." We conclude with respect to JCPenney's contention that, as long as JCPenney and the other Carousel Center petitioners receive just compensation for the value of the leasehold interests that are to be acquired by condemnation (*see Westchester Cr. Corp.*, 286 AD2d at 162), SIDA may acquire those leasehold interests through the exercise of its power of eminent domain.

The Carousel Center petitioners contend that SIDA may not exercise its powers of eminent domain to acquire rights relating to the Carousel Center interests without also acquiring the underlying real property. We reject that contention. As noted, General Municipal Law § 858 (4) authorizes SIDA to condemn "real property *or* rights or easements therein" (emphasis added). In addition, the Carousel Center petitioners' contention violates the well-established principle that a condemnor has no right to condemn land in excess of what is needed for its public purposes (*see Hallock v State of New York*, 32 NY2d 599, 605). Further, courts in other states have permitted a

condemnor to acquire by condemnation leasehold and other contract rights without also acquiring the underlying real property at the same time (*see City of Atlanta v Airways Parking Co.*, 225 Ga 173, 176-177, 167 SE2d 145, 147-148; *City of Glendale v Superior Ct.*, 18 Cal App 4th 1768, 1773-1775, 23 Cal Rptr 2d 305, 308-310). Thus, we conclude that SIDA may acquire the leasehold interests of the Carousel Center petitioners without also acquiring the underlying real property.

■ There is likewise no merit to the contentions of petitioners that SIDA did not comply with certain procedural requirements of EDPL article 2. EDPL 202 (A) provides in pertinent part:

> "Where a public hearing is required by this article the condemnor shall give notice to the public of the purpose, time and location of its hearing setting forth the proposed location of the public project including any proposed alternate locations, at least ten but no more than thirty days prior to such public hearing by causing such notice to be published in at least five successive issues of an official daily newspaper."

EDPL 203 provides in pertinent part:

> "At the public hearing the condemnor shall outline the purpose, proposed location or alternate locations of the public project and any other information it considers pertinent, including maps and property descriptions of the property to be acquired and adjacent parcels. Thereafter, any person in attendance shall be given a reasonable opportunity to present an oral or written statement and to submit other documents concerning the proposed public project. A record of the hearing shall be kept, including written statements submitted."

With respect to the ultimate determination and findings of the condemnor, EDPL 204 (B) provides as follows:

> "The condemnor, in its determination and findings, shall specify, but shall not be limited to the following:
>
> "(1) the public use, benefit or purpose to be served by the proposed public project;
>
> "(2) the approximate location for the proposed pub-

lic project and the reasons for the selection of that location;

"(3) the general effect of the proposed project on the environment and residents of the locality; [and]

"(4) such other factors as it considers relevant."

The Court of Appeals has recognized that EDPL 202 (A) and 203 require only that the condemnor set forth the "proposed location of the public project" in the public hearing notice, while "EDPL 204 (B) (2) requires only that the 'approximate location' of the project be specified in the ensuing determination" (*Matter of Wechsler v New York State Dept. of Envtl. Conservation*, 76 NY2d 923, 927; *see also Matter of Town of Riga v County of Monroe*, 166 AD2d 39, 42-43, *appeal dismissed* 78 NY2d 951, *lv denied* 78 NY2d 862). In addition, there is no merit to petitioners' contention that EDPL 202 (A), which requires the condemnor to state the purpose of the hearing in its notice, "obligates it to describe every aspect of the project and its implementation" (*Greenwich Assoc. v Metropolitan Transp. Auth.*, 152 AD2d 216, 220).

Here, SIDA caused a notice of public hearing to be published pursuant to EDPL 202 on five consecutive days, from April 9 through April 13, 2002. The notice stated, inter alia, that SIDA would hold a public hearing on April 30, 2002, at a certain place and time, "for the purpose of describing the acquisition of real property interests (described below); contemporaneously or in stages pursuant to EDPL 401 (C), necessary to construct the DestiNY USA Project, including without limitation acquiring interests in real property necessary to construct public infrastructure improvements and to construct modifications to the existing Carousel Center."

In addition, SIDA's findings and determination state that the real property interests to be acquired consist of the right-of-way interests as well as the Carousel Center interests, which include, inter alia, "interests of some or all tenants in varying degrees created by leases or agreements that may establish restrictions on: the use of the lands surrounding the mall building; the use of space within the mall building that [is] inconsistent with DestiNY USA Project designs; the use of common interior areas within the mall building; visibility and/or signage; the name of the project; and any other applicable interests that may exist." Thus, we conclude that there has been adequate compliance with the procedural requirements of EDPL 202 and 204. We therefore reject the contention of

JCPenney that the public hearing notice was inadequate to inform it of SIDA's intention to acquire its contractual rights and, further, that the findings and determination were so vague as to constitute a deprivation of its right to due process under the Federal and State Constitutions. "[T]he procedures outlined in the EDPL satisfy both the procedural and substantive due process requirements of the Federal and State Constitutions" (*Matter of Waldo's, Inc. v Village of Johnson City*, 141 AD2d 194, 199, *affd* 74 NY2d 718).

JCPenney also contends that the Carousel Center interests are not being acquired for a public purpose, but rather are being "nullified" to the extent that they conflict with the DestiNY USA project in order to benefit Pyramid. Kaufmann's and Lord & Taylor contend that SIDA may not exercise its power of eminent domain to take property already devoted to a public use for a different public use. Hiawatha contends that SIDA is entitled only to the property necessary for its proposed public purpose.

■ "When reviewing the determination of a municipality to exercise its power of eminent domain, we must determine whether 'a public use, benefit or purpose will be served by the proposed acquisition' (EDPL 207 [C] [4])" (*Matter of Bergen Swamp Preserv. Socy. v Village of Bergen*, 294 AD2d 827, 827-828). The determination must be confirmed if " 'the exercise of the eminent domain power is rationally related to a conceivable public purpose' " (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 425; *see Bergen Swamp Preserv. Socy.*, 294 AD2d at 828; *see also Matter of Ranauro v Town of Owasco*, 289 AD2d 1089, 1090). Although in addition to the public benefit Pyramid will benefit privately from the project, that "incidental private benefit will not invalidate [the] agency's determination so long as the public purpose is dominant" (*Waldo's, Inc.*, 74 NY2d at 721; *see Sun Co.*, 209 AD2d at 43). Here, SIDA's stated purposes for the acquisition of petitioners' property support the determination that the DestiNY USA project serves a legitimate public purpose, and that the public purpose is dominant (*see Waldo's, Inc.*, 74 NY2d at 721; *Sun Co.*, 209 AD2d at 43).

Kaufmann's and Lord & Taylor also contend that SIDA lacks authority to condemn their property interests because the power to condemn does not extend to property that is already devoted to a public purpose (*see Buffalo Sewer Auth. v Town of Cheektowaga*, 20 NY2d 47, 52-53). There is no merit to that contention. "[L]and devoted to a public use may be condemned

for another public use only if the new use would not materially interfere with the initial use" (*Matter of Village of Middleburgh*, 120 AD2d 830, 831; *see Town of Riga*, 166 AD2d at 41; *see also Bergen Swamp Preserv. Socy.*, 294 AD2d at 828), and here the initial public purpose for the property would be furthered.

JCPenney also contends that SIDA's attempt to alter or abrogate the consent provisions of the lease between JCPenney and Pyramid is an unlawful impairment of contract under United States Constitution, article I, § 10. It is, however, well established that "the exercise of powers that are inherent in and essential to the effective operation of government, such as eminent domain, cannot be contracted away and are not subject to the Contract Clause" (*Westchester Cr. Corp.*, 286 AD2d at 162).

■ In addition, the Carousel Center petitioners contend that SIDA has failed to meet the substantive and procedural requirements of SEQRA. Specifically, they contend that SIDA has failed to take the required steps to review the potential environmental impact of recent and substantial changes to the DestiNY USA project. Hiawatha advances a similar contention. We conclude that there is no merit to those contentions.

The record establishes that SIDA took the requisite "hard look" at the project and project modifications. It is well established that, "in reviewing the substantive issues raised in a SEQRA proceeding, [a] court will not substitute its judgment for that of the agency if the agency reached its determination in some reasonable fashion" (*Mobil Oil Corp.*, 224 AD2d at 22; *see Jackson*, 67 NY2d at 416-417). Our authority "is limited to reviewing whether the determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (*Matter of Gernatt Asphalt Prods. v Town of Sardinia*, 87 NY2d 668, 688; *see Mobil Oil Corp.*, 224 AD2d at 22). In addition, "[w]hether or not a modification is significant is generally a decision to be made by the agency after taking a 'hard look'" (*Jackson*, 67 NY2d at 429, citing *Sierra Club v United States Army Corps of Engrs.*, 701 F2d 1011, 1036-1037). The extensive record in this case reflects the extent to which this project's potential environmental impacts have been studied as the project has continued to grow.

Finally, Hiawatha does not object to the stated goals of the DestiNY USA project, which it concedes will result in a much needed economic expansion and will help to rejuvenate the eco-

nomic base of the City. Rather, Hiawatha contends that the stated goals are merely a pretext for one not stated, that of acquiring all of Hiawatha's property in order to construct a golf course. In support of its contention, Hiawatha has appended to its petition a copy of an article from a city newspaper concerning a proposed golf course to be built on the lakefront property.

As SIDA properly notes, the newspaper article is dehors the record and cannot be considered by our Court. Moreover, we cannot rely upon mere conjecture concerning SIDA's alleged "true motivation" as a basis for annulling the determination (*see Matter of Broadway Schenectady Entertainment v County of Schenectady,* 288 AD2d 672, 673).

## IV

### Conclusion

Accordingly, the determination of SIDA should be confirmed and the petition in each proceeding dismissed.

HAYES, KEHOE, BURNS and LAWTON, JJ., concur.

It is hereby ordered that the determination be and the same hereby is unanimously confirmed, without costs, and the petition is dismissed.