■ LT PROPCO, LLC, Appellant, v CAROUSEL CENTER COMPANY, L.P., et al., Respondents. (Action No. 1.) LORD & TAYLOR CAROUSEL, INC., Appellant, v CAROUSEL CENTER COMPANY, L.P., et al., Respondents. (Action No. 2.) KAUFMANN's CAROUSEL, INC., Appellant, v CAROUSEL CENTER COMPANY, L.P., et al., Respondents. (Action No. 3.) In the Matter of CITY OF SYRACUSE INDUSTRIAL DEVELOPMENT AGENCY, Respondent, to Acquire Certain Interests in the Carousel Center Site, Which Site is Generally Identified as 1 Carousel Center Drive (Lot 11K), SBL NO. 114-02-05.6, and 304 Hiawatha Boulevard W. Rear (Lot 11B), SBL NO. 114-02-05.2, in the City of Syracuse, New York, Which Parcels Comprise a Portion of the Site for the Phased Public Project Known as Destiny USA. LORD & TAYLOR CAROUSEL, INC., Appellant. (Proceeding No. 1.) In the Matter of CITY OF SYRACUSE INDUSTRIAL DEVELOPMENT AGENCY, Respondent, to Acquire

Certain Interests in the Carousel Center Site, Which Site is Generally Identified as 1 Carousel Center Drive (Lot 11K), SBL NO. 114-02-05.6, and 304 Hiawatha Boulevard W. Rear (Lot 11B), SBL NO. 114-02-05.2 in the City of Syracuse, New York, Which Parcels Comprise a Portion of the Site for the Phased Public Project Known as Destiny USA. KAUFMANN's CAROUSEL, INC., Appellant. (Proceeding No. 2.) (Appeal No. 3.) [893 NYS2d 397]—

Memorandum: These appeals are the latest in a series stemming from the condemnation by defendant/petitioner Syracuse Industrial Development Agency (SIDA) in an EDPL article 4 proceeding of certain leasehold interests of plaintiff-respondent Kaufmann's Carousel, Inc. (Kaufmann's) and plaintiff-respondent Lord & Taylor Carousel, Inc. (Lord & Taylor), among others (*Matter of City of Syracuse Indus. Dev. Agency [J.C. Penney Corp., Inc.—Carousel Ctr. Co., L.P.]*, 32 AD3d 1332 [2006], *lv denied* 7 NY3d 714 [2006], *cert denied* 550 US 918 [2007]; *Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency*, 301 AD2d 292 [2002], *lv denied* 99 NY2d 508). In 1991 Kaufmann's and Lord & Taylor entered into a series of agreements with Pyramid Companies (Pyramid) establishing long-term leases with Pyramid to operate retail department stores as anchor tenants at the Carousel Center shopping mall (Carousel Center). Among those agreements is a Construction, Operation and Reciprocal Easement Agreement (REA) that governs, inter alia, the parties' rights and responsibilities with respect to common areas, including the right of Kaufmann's and Lord &

Taylor to the parking area surrounding their respective stores, and the parties' respective real estate tax obligations. Lord & Taylor's interest in its Carousel Center store has since been assigned to plaintiff LT Propco, LLC (LT Propco), and Pyramid's interests with respect to the contracts at issue, including the REA, have been assigned to defendant Carousel Center Company, L.P. (Carousel Company).

LT Propco and Kaufmann's (hereafter, plaintiffs) each commenced actions against Carousel Company and SIDA asserting 15 causes of action in which they sought declarations that, inter alia, they either have no obligation to pay to Carousel Company amounts serving as contributions to a payment in lieu of taxes (PILOT) agreement or that any such obligation is limited, and that they have the right to terminate the REA as a result of SIDA's prior condemnation.

As relevant on appeal, by the order in appeal No. 2 Supreme Court granted defendants' motions seeking to dismiss plaintiffs' complaints in their entirety, whereupon those plaintiffs moved for leave to reargue with respect to three of their causes of action. By the judgment in appeal No. 3, the court granted the motion in part and made several declarations with respect to, inter alia, the obligations of plaintiffs to make PILOT payments and their ability to terminate the REA. We conclude that the declarations were properly made.

We reject the contention of plaintiffs that REA § 18 (1) (c) required Carousel Company to obtain their consent prior to entering into a 2005 PILOT agreement. REA § 18.1 (c) states that "[Carousel Company] shall not make any agreement with the taxing authority . . . without the agreement of the Major Party whose Parcel is the subject [of], or is affected by," the agreement. That section, however, when read in the context of article 18 of the REA, applies when there is no PILOT agreement governing real estate tax obligations for the relevant parcels. Instead, section 18.1 (b) of the REA applies when any PILOT agreement exists, and that section does not contain language limiting the ability of Carousel Company to negotiate for or enter into PILOT agreements. Further, SIDA acquired in the condemnation proceeding "[a]ny rights which restrict or otherwise adversely affect in any way any contemplated SIDA payment-in-lieu-of-tax ('PILOT') or financing structure for DestiNY USA, including without limitation, any restriction on the amount required to be paid as a PILOT." Because Carousel Company was not obligated to obtain plaintiffs' consent prior to entering into a new 2005 PILOT agreement, plaintiffs are not entitled to a declaration that they have no obligation to contrib-

ute to payments pursuant to that PILOT agreement based on Carousel Company's failure to do so. Thus, the court properly declared that plaintiffs remained obligated to make contributions to PILOT payments in accordance with the REA, even if the amount of such contributions exceeds the amounts previously paid. Additionally, because the current PILOT agreement separates the existent Carousel Center from any expansion parcels, there was no need for the court to declare a new formula by which the parties should calculate plaintiffs' PILOT contributions (*see generally DiFrancesco v County of Rockland*, 41 AD3d 530, 532 [2007], *appeal dismissed* 9 NY3d 953 [2007]).

Plaintiffs further contend that they were entitled to a declaration that conditions currently existed that would permit them to terminate the REA pursuant to section 17.4 of that agreement. We reject that contention. Although we conclude that the court erred in determining that the termination right set forth in section 17.4 is dependent upon the parking requirement easement in REA § 11.1, we nevertheless conclude that the court properly declared that "conditions do not exist for [p]laintiff[s] to terminate the REA . . . and that [p]laintiff[s] currently may not exercise that right." Plaintiffs' allegations that planned construction will result in a parking reduction sufficient to trigger the termination right in section 17.4 are speculative, whereas section 17.4 contemplates an actual deprivation of parking availability in order to become operative. Present—Smith, J.P., Peradotto, Green, Pine and Gorski, JJ.