In the Matter of SYRACUSE UNIVERSITY, Petitioner, v PROJECT ORANGE ASSOCIATES SERVICES CORPORATION, Respondent. [897 NYS2d 335]—

Proceeding pursuant to EDPL 207 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to annul the determination of respondent authorizing the condemnation of certain real property owned by petitioner.

It is hereby ordered that the determination is unanimously annulled on the law without costs and the petition is granted.

Memorandum: Petitioner, Syracuse University (SU), commenced this original proceeding pursuant to EDPL 207 seeking to annul the determination of respondent, Project Orange Associates Services Corporation (POASC), authorizing the

condemnation of real property owned by SU on which a cogeneration facility and steam plants are located, as well as certain underground steam distribution mains originating from the aforementioned facilities. We annul the determination and grant the petition.

Pursuant to EDPL article 2, which governs the judicial review procedure in a condemnation case, the scope of this Court's inquiry is "very limited" (*Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540, 546 [2006]). We must " 'either confirm or reject the condemnor's determination and findings,' and [our] review is confined to whether (1) the proceeding was constitutionally sound; (2) the condemnor had the requisite authority; (3) its determination complied with [article 8 of the Environmental Conservation Law (State Environmental Quality Review Act)] and EDPL article 2; and (4) the acquisition will serve a public use" (*id.*, citing EDPL 207 [C]; *see Matter of Dudley v Town Bd. of Town of Prattsburgh*, 59 AD3d 1103, 1103-1104 [2009]). A negative conclusion with respect to any one of those factors mandates rejection of the condemnor's determinations (*see Matter of Kaur v New York State Urban Dev. Corp.*, 72 AD3d 1, 8-9 [2009]).

A "public use, benefit or purpose" must exist to warrant the exercise of the power of eminent domain (EDPL 204 [B] [1]), and here SU primarily contends that the purported public use of the acquisition is illusory. We agree. "What qualifies as a 'public purpose' or 'public use' is broadly defined as encompassing virtually any project that may confer upon the public a benefit, utility, or advantage" (*Matter of 49 WB, LLC v Village of Haverstraw*, 44 AD3d 226, 235 [2007]; *see Kaur*, 72 AD3d at 9-11). "Whether a use to which property is to be devoted by a condemnor is, in fact, for the public benefit is a question to be determined by the courts based on the record" (*49 WB, LLC*, 44 AD3d at 235; *see Yonkers Community Dev. Agency v Morris*, 37 NY2d 478, 485 [1975], *appeal dismissed* 423 US 1010 [1975]). An "incidental private benefit will not invalidate [a condemnor's] determination so long as the public purpose is dominant" (*Matter of Waldo's, Inc. v Village of Johnson City*, 74 NY2d 718, 721 [1989]; *see Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency*, 301 AD2d 292, 303 [2002], *lv denied* 99 NY2d 508 [2003]), and it logically follows that a merely incidental public benefit coupled with a dominant private purpose will invalidate a condemnor's determination (*see Matter of Aspen Cr. Estates, Ltd. v Town of Brookhaven*, 47 AD3d 267, 275-276 [2007], *affd* 12 NY3d 735 [2009], *cert denied* 558 US —, 130 S Ct 96 [2009]; *Kaur*, 72 AD3d at 23-25).

We agree with petitioner that the underlying basis for the exercise by the POASC of its eminent domain powers is undoubtedly the outdated business model of its affiliate, Project Orange Associates, LLC (POA). The record establishes that POA entered into a series of 40-year lease agreements with SU in 1990 that allowed POA to construct a cogeneration facility on property owned by SU and to assume operation of two existing steam plants located there. In exchange, POA agreed to sell steam at prices substantially below what SU was paying to produce steam at the existing steam plants. SU both used that steam and sold excess steam to neighboring not-for-profit entities, all of which oppose the proposed condemnation. POA was able to provide that steam at a reduced price because of its expected profits from the sale of electricity under a 40-year contract between POA and Niagara Mohawk Power Corporation (NIMO) that required NIMO to purchase electricity produced at the cogeneration facility. The threat of a NIMO bankruptcy in 1998 caused POA and NIMO to reach a settlement that allowed NIMO to discharge its obligation to purchase electricity from POA in exchange for a significant settlement that permitted POA to provide SU with steam at a significantly reduced rate until July 2008.

The record further establishes that, by 2008, POA took steps to renegotiate its lease agreements with SU, which were unsustainable based on the demise of POA's contractual relationship with NIMO. Indeed, POA commenced a declaratory judgment action against SU in connection with one of its agreements with SU and in addition twice sought emergency judicial relief adjusting the steam price, withheld payment to the contractor responsible for operating the cogeneration facility and disputed certain water and electric charges for the facility. In May 2008, POASC was incorporated as an electric corporation under article 2 of the Transportation Corporations Law and, approximately one year later, provided notice of its intent to condemn the subject property.

Based on the aforementioned facts, we conclude that the record establishes that the proposed condemnation is the last in a series of attempts to free POA from an unfavorable contractual agreement with SU. Thus, at its core, the condemnor "is virtually the sole beneficiary of the [condemnation, and t]his alone is reason to invalidate the condemnation especially where, as here, the public benefit is incrementally incidental to the private benefits" of the condemnation (*Kaur*, 72 AD3d at 23-25). We note in particular that the cogeneration facility contributes a minimal amount of electricity to the

total energy needs of this state, that there is 50% more generation than load in the area in which POASC is located, and that SU continued to operate the steam plants after POA's default. Consequently, we grant the petition (*see generally Kelo v New London*, 545 US 469, 478 [2005]; *49 WB, LLC*, 44 AD3d at 235-236; *Matter of Steel Los III, LP v Power Auth. of State of N.Y.*, 21 Misc 3d 707, 717 [2008]).

Although the issue is academic in light of the foregoing determination, we note that, as previously stated, POASC was incorporated as an electric corporation (*see* Transportation Corporations Law § 3 [b]). Its powers of eminent domain are thus restricted by Transportation Corporations Law § 11 (3-a), which provides in relevant part that an electric corporation "shall have power and authority to acquire such real estate as may be necessary for its corporate purposes," along with Transportation Corporations Law § 11 (3), which establishes the corporate purposes of an electric corporation. The purposes enumerated therein do not include steam distribution. We thus conclude in any event that POASC lacks statutory authority to acquire the subject steam plants (*cf. Iroquois Gas Corp. v Jurek*, 30 AD2d 83, 87-88 [1968]; *see generally Schulman v People*, 10 NY2d 249, 255-256 [1961]; *Peasley v Reid*, 57 AD2d 998, 999 [1977]).

In view of our determination, we do not address SU's remaining contentions, and we further note only that we have disregarded the supplemental affidavit of Timothy J. Sweet dated October 20, 2009, which is outside the record on appeal (*see Kaufmann's Carousel*, 301 AD2d at 305). Present—Scudder, P.J., Fahey, Lindley and Green, JJ.