# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1275**

**OP 13-00836**

PRESENT: SCUDDER, P.J., SMITH, PERADOTTO, LINDLEY, AND SCONIERS, JJ.

---

IN THE MATTER OF GM COMPONENTS HOLDINGS, LLC,
PETITIONER,

V                                                    MEMORANDUM AND ORDER

TOWN OF LOCKPORT INDUSTRIAL DEVELOPMENT
AGENCY, RESPONDENT.

---

BOND, SCHOENECK & KING, PLLC, SYRACUSE (BRODY D. SMITH OF COUNSEL),
FOR PETITIONER.

JONES, HOGAN & BROOKS, LLP, LOCKPORT (MORGAN L. JONES, JR., OF
COUNSEL), FOR RESPONDENT.

---

Proceeding pursuant to EDPL 207 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to annul a determination of respondent to condemn certain real property by eminent domain.

It is hereby ORDERED that the determination is unanimously confirmed without costs and the petition is dismissed.

Memorandum: Petitioner, GM Components Holdings, LLC (GMCH), commenced this original proceeding pursuant to EDPL 207 seeking to annul the determination of respondent, Town of Lockport Industrial Development Agency (LIDA), authorizing the condemnation of 91 acres of vacant land owned by GMCH for the purpose of expanding LIDA's industrial park. It is undisputed that the parties had been unsuccessful in negotiating an agreement for LIDA's purchase of the subject property. LIDA determined that a public purpose would be served by increasing its inventory of industrial-zoned sites available for sale to potential purchasers/developers, particularly sites of 25 or more acres, thereby providing jobs for residents of the area and a broader tax base for the Town of Lockport. With respect to the required review of the environmental impact of the proposed condemnation pursuant to the State Environmental Quality Review Act ([SEQRA] ECL article 8; *see* EDPL 207 [C] [3]), LIDA issued a negative declaration based upon its determination that the acquisition of the property would not result in a negative impact on the environment. GMCH contends, inter alia, that LIDA's determination that the acquisition would serve a public use is illusory because potential developers have the option to purchase the property from GMCH. GMCH further contends that LIDA failed to comply with SEQRA because it improperly segmented the review by considering only the acquisition,

and not the future development, of the parcel.

It is well settled that the scope of our review of LIDA's determination is "very limited" (*Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540, 546). We must " 'either confirm or reject [LIDA's] determination and findings,' and [our] review is confined to whether (1) the proceeding was constitutionally sound; (2) [LIDA] had the requisite authority; (3) its determination complied with SEQRA and EDPL article 2; and (4) the acquisition will serve a public use" (*id.*; *see* EDPL 207 [C]). "The burden is on the party challenging the condemnation to establish that the determination 'was without foundation and baseless' . . . Thus, '[i]f an adequate basis for a determination is shown and the objector cannot show that the determination was without foundation, the [condemnor's] determination should be confirmed' " (*Matter of Butler v Onondaga County Legislature*, 39 AD3d 1271, 1271-1272).

Addressing first the public use factor, we note that, in support of its determination authorizing the condemnation, LIDA found that since the creation of the 201-acre industrial park in 1981 it has assisted 30 businesses, accounting for investments totaling $399,164,000 and employment of 491 area residents. LIDA also found that as of early 2013 there were only 56 acres of vacant land in the industrial park and only 33 acres thereof were suitable for sale and development, with the single largest parcel measuring 14 acres total. Since 2008, LIDA has conducted five sales, including a total of 42 acres to Yahoo! in 2009 and 2012. LIDA also found that the property, which is bordered by a state highway and a railroad, is in proximity to the industrial park and is zoned for industrial use. We therefore conclude that LIDA's determination to exercise eminent domain power "is rationally related to a conceivable public purpose" (*Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency*, 301 AD2d 292, 303, *lv denied* 99 NY2d 508 [internal quotation marks omitted]; *cf. Matter of Syracuse Univ. v Project Orange Assoc. Servs. Corp.*, 71 AD3d 1432, 1434-1435, *appeal dismissed and lv denied* 14 NY3d 924).

We conclude with respect to the statutory compliance factor that, contrary to GMCH's contention, LIDA "identified the relevant areas of environmental concern, took a hard look at them, and made a reasoned elaboration of the basis for its determination" that there would be no negative impact on the environment as a result of the acquisition of the property (*Matter of Eadie v Town Bd. of Town of N. Greenbush*, 7 NY3d 306, 318 [internal quotation marks omitted]; *see Matter of New York City Coalition to End Lead Poisoning v Vallone*, 100 NY2d 337, 348). Although LIDA considered only the impact of the acquisition and not the impact of potential development, we reject GMCH's contention that LIDA thereby improperly segmented the SEQRA review process (*see* 6 NYCRR 617.2 [ag]). Although LIDA intends to sell the property to a potential developer, there was no identified purchaser or specific plan for development at the time the SEQRA review was conducted (*cf. Matter of Riverso v Rockland County Solid Waste Mgt. Auth.*, 96 AD3d 764, 765-766; *Matter of Forman v Trustees of State Univ. of N.Y.*, 303 AD2d 1019, 1019-1020), and thus we conclude that under these facts the

acquisition is not a "separate part[] 'of a set of activities or steps' in a single action or project" (*Matter of Settco, LLC v New York State Urban Dev. Corp.*, 305 AD2d 1026, 1027, *lv denied* 100 NY2d 508; *see Matter of Village of Tarrytown v Planning Bd. of Vil. of Sleepy Hollow*, 292 AD2d 617, 620-621, *lv denied* 98 NY2d 609; *see generally Matter of Center of Deposit, Inc. v Village of Deposit*, 90 AD3d 1450, 1453).  We have reviewed GMCH's remaining contentions and conclude that they are without merit.  We therefore conclude that GMCH failed to sustain its burden of establishing that the determination of LIDA to condemn the parcel is "without foundation and baseless" (*Butler*, 39 AD3d at 1272).

Entered:  December 27, 2013                          Frances E. Cafarell
                                                     Clerk of the Court