Matter of HBC Victor LLC v Town of Victor (2022 NY Slip Op 07313)

Matter of HBC Victor LLC v Town of Victor

2022 NY Slip Op 07313

Decided on December 23, 2022

Appellate Division, Fourth Department

Lindley, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 23, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., NEMOYER, CURRAN, WINSLOW, AND BANNISTER, JJ.

683 OP 22-00329

[*1]IN THE MATTER OF HBC VICTOR LLC, PETITIONER,
v
TOWN OF VICTOR, RESPONDENT. 

PHILLIPS LYTLE LLP, BUFFALO (CRAIG A. LESLIE OF COUNSEL), FOR PETITIONER.
HARRIS BEACH PLLC, PITTSFORD (KYLE D. GOOCH OF COUNSEL), FOR RESPONDENT. 

Lindley, J.P.
 Proceeding pursuant to EDPL 207 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to annul the determination of respondent. The determination authorized condemnation of certain real property owned by petitioner. 
It is hereby ORDERED that the determination is unanimously annulled on the law without costs and the petition is granted.
Opinion by Lindley, J.P.:
Petitioner commenced this original proceeding pursuant to EDPL 207 seeking to annul the determination of respondent, Town of Victor (Town), authorizing the condemnation of certain real property owned by petitioner in Ontario County. The property in question is connected to an enclosed regional shopping center known as Eastview Mall, owned by Eastview Mall, LLC. Until recently, the subject property was occupied by a Lord & Taylor department store, one of five anchor tenants at the mall. The operator of the Lord & Taylor store filed for bankruptcy in August 2020 and closed the store permanently in February 2021 during the COVID-19 pandemic.
In November 2021, while petitioner was attempting to secure a new tenant for the property, the Town passed a resolution authorizing a public hearing to start the condemnation process. At the public hearing, petitioner objected to the proposed taking and presented evidence that it was maintaining the property and actively seeking a new tenant, which petitioner explained was not easy to find during the pandemic. The Town thereafter adopted resolutions approving the acquisition of petitioner's property via condemnation and determining that the taking will not have a potential significant adverse impact on the environment.
Petitioner challenges the taking on a number of grounds, contending, inter alia, that neither the condemnation notice nor the Town's determination and findings specifically identifies or describes a legitimate public project, as required by EDPL 207 (C) (3). We agree. Indeed, the Town readily acknowledges that it has not yet decided what to do with the property after obtaining title, and the notice merely states that "[t]he proposed Acquisition is required for and is in connection with a certain project . . . consisting of facilitating the productive reuse and redevelopment of the vacant and underutilized Proposed Site through municipal and/or economic development projects . . . by attracting and accommodating new tenant(s) and/or end user(s)." In its determination and findings, the Town stated that "no specific future uses or actions have been formulated and/or specifically identified."
Because the Town has not indicated what it intends to do with the property, we are unable to determine whether "the acquisition will serve a public use" (Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 546 [2006]; see Matter of United Ref. Co. of Pa. v Town of Amherst, 173 AD3d 1810, 1810 [4th Dept 2019], lv denied 34 NY3d 913 [2020]). Of [*2]course, "[t]he existence of a public use, benefit, or purpose underlying a condemnation is a sine qua non" to the government's ability to exercise its powers to take private property through eminent domain (Matter of 49 WB, LLC v Village of Haverstraw, 44 AD3d 226, 238 [2d Dept 2007], abrogated on other grounds by Hargett v Town of Ticonderoga, 13 NY3d 325 [2009]; see Matter of Syracuse Univ. v Project Orange Assoc. Servs. Corp., 71 AD3d 1432, 1433 [4th Dept 2010], appeal dismissed and lv denied 14 NY3d 924 [2010]).
As our colleagues in the Second Department have noted, "the existence of a 'public use' must be determined at the time of the taking since the requirement of public use would otherwise be rendered meaningless by bringing 'speculative future public benefits' which might never be realized within its scope" (Matter of Gabe Realty Corp. v City of White Plains Urban Renewal Agency, 195 AD3d 1020, 1023 [2d Dept 2021] [emphasis added], quoting Daniels v Area Plan Commn. of Allen County, 306 F3d 445, 466 [7th Cir 2002]; see generally Yonkers Community Dev. Agency v Morris, 37 NY2d 478, 484-486 [1975], appeal dismissed 423 US 1010 [1975]). In simple terms, the government cannot take your land and then decide later what to do with it without running afoul of the Takings Clause of the Fifth Amendment of the United States Constitution, as applied to the states by the Fourteenth Amendment.
Relying in part on Matter of GM Components Holdings, LLC v Town of Lockport Indus. Dev. Agency (112 AD3d 1351 [4th Dept 2013], appeal dismissed 22 NY3d 1165 [2014], lv denied 23 NY3d 905 [2014]), the Town nevertheless contends that its "lack of a particularized plan as to how the Town will redevelop the Property does not negate the existence of a valid and legitimate public use in satisfaction of the EDPL." According to the Town, GM Components Holdings, LLC stands for the proposition that a municipality may acquire property for redevelopment "without having decided" how the property will be used. We cannot agree.
In GM Components Holdings, LLC, the Town of Lockport Industrial Development Agency (IDA) operated an industrial park and sought to condemn 91 acres of vacant land adjacent to the park (112 AD3d at 1351). With respect to the underlying public purpose, the IDA stated that it intended to sell the property to a business that wished to locate in the area, thereby creating jobs and adding to the tax base (id.). The IDA had previously sold numerous other parcels of land in the industrial park for that same purpose (id. at 1352). Although the IDA did not have a buyer in mind, the IDA made clear what it intended to do with the condemned property, to wit, sell it to a business that would locate in the industrial park.
Here, in contrast, the Town professes to have no idea what it intends to do with petitioner's property. The Town does not even rule out simply transferring title to Eastview Mall, LLC, which owns the adjoining mall and whose principals asked the Town to condemn the property. Again, unless and until the Town says what it plans to do with the property upon taking, we cannot determine whether the taking will serve a public use. Nor can we determine whether, as petitioner alleges, the condemnation will result in a "merely incidental public benefit coupled with a dominant private purpose," which would invalidate the taking (Syracuse Univ., 71 AD3d at 1433; see generally Kelo v City of New London, 545 US 469, 485 [2005], reh denied 545 US 1158 [2005]).
Although "the remediation of substandard or insanitary conditions (i.e., urban blight) is a proper basis for the exercise of the power of eminent domain" (Gabe Realty Corp., 195 AD3d at 1022; see Matter of Goldstein v New York State Urban Dev. Corp., 13 NY3d 511, 524 [2009], rearg denied 14 NY3d 756 [2010]), there is no indication in the record that petitioner's property is in a blighted condition. To the contrary, the evidence at the public hearing established that petitioner has cleaned and maintained the premises since the Lord & Taylor vacancy and continues to pay property taxes at the assessed value of more than $4,000,000. We do not equate mere vacancy with blight, especially when the vacancy occurs unexpectedly in the midst of a global pandemic.
The Town's reliance on Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency (188 AD3d 1601 [4th Dept 2020]) is misplaced inasmuch as the property condemned in that case had "experienced deterioration since it became vacant" years earlier (id. at 1602). There is no evidence, or even an allegation, of deterioration here.
In sum, we conclude that petitioner met its burden of establishing that the Town's [*3]proposed taking does not rationally relate to any conceivable public purpose (see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 425 [1986]; cf. Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency, 301 AD2d 292, 303 [4th Dept 2002], lv denied 99 NY2d 508 [2003]), and that the Town's determination and findings must be rejected. Because the Town lacks authority to condemn the property, petitioner is entitled to be reimbursed for reasonable attorney's fees and costs pursuant to EDPL 702 (B) (see Hargett, 13 NY3d at 330; Gabe Realty Corp., 195 AD3d at 1023). Petitioner may submit an application to this Court upon notice to the Town.
Based on our determination, we do not address petitioner's remaining contentions.
Entered: December 23, 2022
Ann Dillon Flynn
Clerk of the Court