Matter of Bowers Dev., LLC v Oneida County Indus. Dev. Agency (2022 NY Slip Op 07327)

Matter of Bowers Dev., LLC v Oneida County Indus. Dev. Agency

2022 NY Slip Op 07327

Decided on December 23, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on December 23, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., NEMOYER, CURRAN, BANNISTER, AND MONTOUR, JJ.

764 OP 22-00744

[*1]IN THE MATTER OF BOWERS DEVELOPMENT, LLC, AND ROME PLUMBING & HEATING SUPPLY CO., INC., PETITIONERS,
v
ONEIDA COUNTY INDUSTRIAL DEVELOPMENT AGENCY AND CENTRAL UTICA BUILDING, LLC, RESPONDENTS. 

FOGEL & BROWN, P.C., SYRACUSE (MICHAEL A. FOGEL OF COUNSEL), FOR PETITIONERS. 
PAUL J. GOLDMAN, ALBANY, FOR RESPONDENT ONEIDA COUNTY INDUSTRIAL DEVELOPMENT AGENCY.
COHEN COMPAGNI BECKMAN APPLER & KNOLL, PLLC, SYRACUSE (LAURA L. SPRING OF COUNSEL), FOR RESPONDENT CENTRAL UTICA BUILDING, LLC. 

 Proceeding pursuant to Eminent Domain Procedure Law § 207 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to annul the determination of respondent Oneida County Industrial Development Agency to condemn certain real property. 
It is hereby ORDERED that the determination is annulled on the law without costs and the petition is granted.
Memorandum: Petitioners commenced this original proceeding pursuant to EDPL 207 seeking to annul the determination of respondent Oneida County Industrial Development Agency (OCIDA) to condemn certain real property by eminent domain. Pursuant to EDPL 207 (C), this Court "shall either confirm or reject the condemnor's determination and findings." Our scope of review is limited to "whether (1) the proceeding was constitutionally sound; (2) the condemnor had the requisite authority; (3) its determination complied with [the State Environmental Quality Review Act (SEQRA)] and EDPL article 2; and (4) the acquisition will serve a public use" (Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 546 [2006]; see EDPL 207 [C]; Matter of Syracuse Univ. v Project Orange Assoc. Servs. Corp., 71 AD3d 1432, 1433 [4th Dept 2010], appeal dismissed and lv denied 14 NY3d 924 [2010]).
We agree with petitioners that OCIDA lacked the requisite authority to acquire the subject property. As an industrial development agency, OCIDA's statutory purposes are, inter alia, to "promote, develop, encourage and assist in the acquiring . . . [of] . . . commercial . . . facilities" (General Municipal Law § 858). OCIDA's powers of eminent domain are restricted by General Municipal Law § 858 (4), which provides, in relevant part, that an industrial development agency shall have the power "[t]o acquire by purchase, grant, lease, gift, pursuant to the provisions of the eminent domain procedure law, or otherwise and to use, real property . . . therein necessary for its corporate purposes." The purposes enumerated in the statute do not include projects related to hospital or healthcare-related facilities (see § 858). While OCIDA's determination and findings indicate that the subject property was to be acquired for use as a surface parking lot, the record establishes that, contrary to respondents' assertion, the primary purpose of the acquisition was not a commercial purpose. Rather, the property was to be acquired because it was a necessary component of a larger hospital and healthcare facility project. We therefore annul the determination and grant the petition (see Syracuse Univ., 71 AD3d at 1435; see generally Schulman v People, 10 NY2d 249, 255-256 [1961]; Peasley v Reid, [*2]57 AD2d 998, 999 [3d Dept 1977]).
In light of our determination, petitioners' remaining contentions are academic (see Matter of Hargett v Town of Ticonderoga, 35 AD3d 1122, 1124 [3d Dept 2006], lv denied 8 NY3d 810 [2007]).
All concur except Curran, J., who dissents and votes to confirm the determination and dismiss the petition in the following memorandum: I respectfully dissent from the majority's conclusion that respondent Oneida County Industrial Development Agency (OCIDA) lacked the requisite statutory authority to acquire the subject property via eminent domain pursuant to its broad purposes as set forth in General Municipal Law § 858 because I conclude that OCIDA's determination that construction of a surface parking lot on the subject property constitutes a "commercial facility" is neither irrational nor unreasonable. Inasmuch as I agree with respondents that acquisition of the subject property serves a public purpose (see generally Matter of Truett v Oneida County, 200 AD3d 1721, 1722 [4th Dept 2021], lv denied 38 NY3d 907 [2022]), and further agree that petitioners' remaining contentions are without merit, I would confirm the determination and dismiss the petition.
I.
Following an extensive review process that concluded in 2015, the Mohawk Valley Hospital System (MVHS) began the process of consolidating its healthcare services for Oneida, Herkimer, and Madison counties into an integrated healthcare campus to be located in a blighted section of the downtown area of the City of Utica. In 2017, MVHS received a $300 million grant from the New York State Department of Health to situate the integrated healthcare campus at the downtown location. The central feature of the new campus will be Wynn Hospital, which has received its certificate of need and is currently under construction. Since its inception, MVHS's plan for the healthcare campus has included a private medical office building (MOB) to be located on Columbia Street behind Wynn Hospital. Also from its inception, the plan envisioned surface level parking to be located adjacent to the MOB. MVHS owns three of the four parcels along Columbia Street that would be leased to the MOB operator both for the MOB itself as well as for the adjacent surface level parking.
MVHS ultimately elected to have respondent Central Utica Building, LLC (CUB), a for-profit company founded by private physicians, own and operate the MOB. CUB's MOB would, in addition to servicing its own patients on a for-profit basis, provide outpatient services deemed valuable to MVHS for its integrated heathcare campus. CUB has specific occupancy plans for the MOB, including approximately 20,000 square feet dedicated to a group of cardiologist physicians, and 18,000 square feet for the purpose of operating "a[] [Public Health Law a]rticle 28 licensed, Medicare certified multi-specialty ambulatory surgery center with six operating rooms." CUB has secured financing for its MOB proposal.
The fourth parcel along Columbia Street—i.e., the subject property—is owned by petitioner Rome Plumbing & Heating Supply Co., Inc. The subject property is an approximately one-acre piece of real property that has, for years, been slated to be part of the surface level parking area located immediately adjacent to the MOB. Petitioner Bowers Development, LLC (Bowers) purports to be the contract vendee for the subject property. Bowers allegedly plans to construct its own MOB on the one-acre parcel, despite not having identified any physician group willing to service it, and not having any arrangement with MVHS or any ability to use the adjacent parcels owned by MVHS for parking.
Meanwhile, CUB submitted an application with OCIDA for financial assistance on the MOB project. It also requested that OCIDA take the subject property through the exercise of its eminent domain power under General Municipal Law § 858 (4). Before deciding whether to invoke its eminent domain powers to acquire the subject property, OCIDA conducted a public hearing during which Bowers agreed with CUB that a MOB located near the hospital would benefit downtown Utica, address urban blight, and enhance patient care. During the review process, one of petitioners' main objections was that OCIDA lacked the requisite statutory authority under General Municipal Law § 858 to use its eminent domain power because that statute "provides the current list of projects for which industrial development agencies have authority," and that list "does not include hospital or health-related projects." Further, inasmuch [*3]as "[t]he proposed CUB project is a hospital or health-related project . . . , the CUB project is not a type of project [for] which OCIDA has jurisdiction or authority." In its determination and findings, OCIDA expressly rejected those contentions and concluded that taking the subject property was within its power because it was for a "commercial facility"—i.e., the surface parking lot—noting, inter alia, that its determination of what constitutes a commercial project is entitled to judicial deference so long as it is reasonable (see Matter of Nearpass v Seneca County Indus. Dev. Agency, 152 AD3d 1192, 1193 [4th Dept 2017]). Thereafter, petitioners commenced this original proceeding pursuant to EDPL 207 seeking to annul OCIDA's determination to condemn the subject property via eminent domain. 
II.
In a proceeding brought pursuant to EDPL 207, "[t]he scope of our review is necessarily narrow since [the] exercise of the eminent domain power is a legislative function" (Matter of West 41st St. Realty v New York State Urban Dev. Corp., 298 AD2d 1, 6 [1st Dept 2002], appeal dismissed 98 NY2d 727 [2002], cert denied 537 US 1191 [2003]; see Kaskel v Impellitteri, 306 NY 73, 80 [1953], rearg denied and mot to amend remittitur granted 306 NY 609 [1953], cert denied 347 US 934 [1954]; Matter of New York City Hous. Auth. v Muller, 270 NY 333, 339 [1936]). As a result, this Court's review is limited to "whether (1) the proceeding was constitutionally sound; (2) the condemnor had the requisite authority; (3) its determination complied with SEQRA and EDPL article 2; and (4) the acquisition will serve a public use" (Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 546 [2006]; see EDPL 207 [C]). As noted above, the issue in dispute here is whether OCIDA had the requisite statutory authority to use its eminent domain power to take the subject property.
It is "well established that an [industrial development agency] is 'authorized by statute to exercise the State's eminent domain powers' " (Sun Co. v City of Syracuse Indus. Dev. Agency, 209 AD2d 34, 41 [4th Dept 1995], appeal dismissed 86 NY2d 776 [1995]; see generally General Municipal Law § 858 [4]). Thus, there is no dispute that OCIDA has the statutory authority to acquire the subject property. The particular point upon which the majority and I disagree is whether OCIDA has exercised that statutory power "for its corporate purposes" (General Municipal Law § 858 [4]).
The power of eminent domain—i.e., "[t]he right to take private property for public use"—"is an inherent and unlimited attribute of sovereignty whose exercise may be governed by the [l]egislature within constitutional limitations and by the [l]egislature within its power delegated to municipalities" (Matter of Mazzone, 281 NY 139, 146-147 [1939], rearg denied 281 NY 671 [1939]). Thus, in the context of an eminent domain proceeding such as this one, the courts have recognized "the structural limitations upon our review of what is essentially a legislative prerogative" (Matter of Goldstein v New York State Urban Dev. Corp., 13 NY3d 511, 526 [2009], rearg denied 14 NY3d 756 [2010]). Consistent with that limited scope of review, there also is a "longstanding policy of deference to legislative judgments in this field" (Kelo v City of New London, 545 US 469, 480 [2005]; see Matter of Kaur v New York State Urban Dev. Corp., 15 NY3d 235, 262 [2010]). A reasonable difference in opinion between the judiciary and the agency lawfully exercising the State's eminent domain power is an insufficient predicate for the courts to supplant the agency's essentially legislative determination (see Goldstein, 13 NY3d at 526). Ultimately, "a court may only substitute its own judgment for that of the legislative body authorizing the project when such judgment is irrational or baseless" (Kaur, 15 NY3d at 254).
To that end, "[t]he burden is on the party challenging the condemnation to establish that the determination was without foundation and baseless" (Matter of Butler v Onondaga County Legislature, 39 AD3d 1271, 1271 [4th Dept 2007] [internal quotation marks omitted]; see Matter of GM Components Holdings, LLC v Town of Lockport Indus. Dev. Agency, 112 AD3d 1351, 1352 [4th Dept 2013], appeal dismissed 22 NY3d 1165 [2014], lv denied 23 NY3d 905 [2014]). "If an adequate basis for a determination is shown and the objector cannot show that the determination was without foundation, the agency's determination should be confirmed" (Matter of Waldo's, Inc. v Village of Johnson City, 74 NY2d 718, 720 [1989] [internal quotation marks omitted]; see Butler, 39 AD3d at 1271-1272).
Here, the sole basis upon which the majority rests its decision to annul OCIDA's determination—and thereby intervenes into what is effectively the legislative process—is its [*4]conclusion that, as a matter of law, General Municipal Law § 858 does not authorize OCIDA to acquire the subject property via eminent domain. The majority grounds that conclusion on its determination that OCIDA's " 'corporate purposes' " do not include "projects related to hospital or healthcare-related facilities." It further concludes, in summary fashion and without any elaboration, that OCIDA's use of eminent domain here "was not [for] a commercial purpose." The majority's conclusion on that latter issue, however, gives no deference to OCIDA's express determination that it was exercising its lawful eminent domain power in furtherance of its express corporate purpose to "promote, develop, encourage and assist in the acquiring, constructing, reconstructing, improving, maintaining, equipping and furnishing," inter alia, "commercial" facilities, and "thereby advance the job opportunities, health, general prosperity and economic welfare of the people of the [S]tate of New York" (General Municipal Law
§ 858). Nowhere does the majority conclude that OCIDA's determination was irrational or that it lacked any foundation or basis (see Kaur, 15 NY3d at 254; Waldo's, Inc., 74 NY2d at 720-721; Butler, 39 AD3d at 1271-1272). Thus, by failing to address OCIDA's expressly stated basis for concluding that it had the statutory authority to exercise its eminent domain power—i.e., that it was done in furtherance of a commercial purpose—the majority has not only failed to afford OCIDA any deference with respect to its legislative determination (see Goldstein, 13 NY3d at 526), it has entirely supplanted OCIDA by improperly making its own de novo determination of that question as a matter of law (see Kaur, 15 NY3d at 254; Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 418 [1986]). In essence, the majority's conclusion makes it appear as though a legislative body—here, OCIDA—played no role at all in the exercise of the State's eminent domain power.
III.
In addition to the deference we generally accord legislative determinations made by agencies in the exercise of the eminent domain power, I note that this Court also follows established precedent requiring us to defer to an agency's interpretation of a broad ambiguous statutory term, provided that the agency's interpretation of that ambiguous term is not irrational or unreasonable (see Nearpass, 152 AD3d at 1193; Matter of Iskalo 5000 Main LLC v Town of Amherst Indus. Dev. Agency, 147 AD3d 1414, 1416 [4th Dept 2017], lv denied 29 NY3d 919 [2017]). Here, OCIDA expressly relied upon Nearpass in determining that it had the statutory authority to acquire the subject property because it was acting in furtherance of a "commercial" purpose—i.e. the same term involved in Nearpass. In my view, pursuant to Nearpass, we must defer to OCIDA's reasonable interpretation of the word "commercial" contained in General Municipal Law § 858, which OCIDA concluded gave it the power to condemn the subject property via eminent domain for the purpose of constructing the surface parking lot.
In Nearpass, the Seneca County Industrial Development Agency (SCIDA) granted tax abatement relief to a resort and casino. In the ensuing CPLR article 78 proceeding, the petitioners contested SCIDA's determination that the resort and casino served, inter alia, a "commercial" purpose within the definition of a "project" under General Municipal Law § 854 (4) (Nearpass, 152 AD3d at 1192-1193). On appeal, this Court rejected the petitioners' contentions and affirmed the dismissal of the petition. Specifically, we held that "the broad statutory term[] 'commercial' . . . [is] ambiguous insofar as [it is] susceptible to conflicting interpretations" (id. at 1193). Thus, "SCIDA's interpretation [was] entitled to great deference, and must be upheld as long as it [was] reasonable" (id. [internal quotation marks omitted]). On that question, we concluded that SCIDA's interpretation that the project was commercial or recreational was not "irrational or unreasonable" (id. [internal quotation marks omitted]).
In my view, we should come to a similar conclusion here—the term "commercial" contained in General Municipal Law § 858 is just as broad and ambiguous as it is in section 854, and therefore OCIDA's interpretation of that term as encompassing the creation of the surface parking lot was reasonable. Thus, giving deference to OCIDA's interpretation of the relevant statute, we should conclude that it did not lack the requisite statutory authority to condemn the subject property via eminent domain. More specifically, there can be little doubt that the general purposes upon which an industrial development agency may exercise its "express powers" (Matter of Madison County Indus. Dev. Agency v State of N.Y. Auths. Budget Off., 151 AD3d 1532, 1534 [3d Dept 2017], affd 33 NY3d 131 [2019]; see General Municipal Law § 858) are set forth in broad terms. Indeed, this Court, as well as the Third Department, have expressly referred to those purposes as being broad in nature (see Matter of Town of Minerva v Essex County Indus. [*5]Dev. Agency, 173 AD2d 1054, 1056 [3d Dept 1991]; Matter of Grossman v Herkimer County Indus. Dev. Agency, 60 AD2d 172, 178 [4th Dept 1977]; see also Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency, 301 AD2d 292, 300 [4th Dept 2002], lv denied 99 NY2d 508 [2003]). Thus, recognizing that the purposes contained in General Municipal Law § 858 are set forth in broad terms, I conclude that OCIDA's determination that acquisition of the subject property for the purpose of constructing a surface parking lot was in furtherance of a "commercial" purpose "is supported by a rational basis" and is "not 'irrational or unreasonable' " (Iskalo 5000 Main LLC, 147 AD3d at 1415-1416; see Nearpass, 152 AD3d at 1193). Indeed, I note that we are required to afford "statutes providing for improvements inuring to the public benefit" a liberal construction (McKinney's Cons Laws of NY, Book 1, Statutes § 342), and therefore we should not constrict General Municipal Law § 858 either by finding that the purpose here was not among its expressly included ones or that it was excluded by implication.
Here, the majority fails to address Nearpass and ignores its obvious application to the resolution of this appeal. Although this case and Nearpass arise out of slightly different contexts—i.e., interpreting different provisions of the General Municipal Law—they both ultimately involve the same question of statutory interpretation in the context of administrative decision-making. As noted, they also both involve the same broad and ambiguous statutory term—i.e., the word "commercial." It would be one thing if the majority acknowledged Nearpass and explained why, despite that case's central holding, OCIDA's determination that the project here was "commercial"—i.e., its interpretation of General Municipal Law § 858—was irrational or unreasonable. Although I would disagree with that bottom-line conclusion, at least the majority would have afforded OCIDA the deference required of its statutory interpretation of a broad ambiguous term, in the context of an eminent domain proceeding, where deference is already accorded to the overarching legislative determinations being made.
Furthermore, unlike the majority, I conclude that the absence of any express reference to hospitals or healthcare facilities among the purposes listed in General Municipal Law § 858 is ultimately irrelevant to whether OCIDA has the power to condemn the subject property in furtherance of a commercial purpose. The part of section 858 describing an industrial development agency's broad purposes lists certain types of projects, but does so using the word "including." In other words, the list of project types contained in that paragraph is not exclusive. Thus, it makes no difference that neither a hospital nor a healthcare-related facility is expressly listed in the purposes paragraph.
In any event, as OCIDA correctly contends, the MOB that would be serviced by the subject property for the development of a surface parking lot is neither a "hospital" nor a "health-related facility" as those terms are generally understood (see Public Health Law § 2994-a [18]; 10 NYCRR 700.2 [a] [4], [5]). Thus, the majority's generic reference to an undefined "healthcare-related facilit[y]" adds nothing to the exclusion it reads into General Municipal Law § 858. It appears that, in its essence, the majority's conclusion stands for the proposition that, if a proposed parking lot is part of a hospital's or heathcare-related facility's campus, however tangentially, an industrial development agency may not utilize its eminent domain power to acquire property for that purpose because a "hospital" or "health-related facility" is either not among the broadly defined purposes in section 858 or is somehow excluded from them. I know of no principle of statutory construction, or any precedent, that supports such a conclusion and I respectfully decline to follow it.
Entered: December 23, 2022
Ann Dillon Flynn
Clerk of the Court