Matter of Huntley Power, LLC v Town of Tonawanda (2023 NY Slip Op 03089)

Matter of Huntley Power, LLC v Town of Tonawanda

2023 NY Slip Op 03089

Decided on June 9, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on June 9, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., LINDLEY, CURRAN, BANNISTER, AND MONTOUR, JJ.

34 OP 22-01460

[*1]IN THE MATTER OF HUNTLEY POWER, LLC, PETITIONER,
v
TOWN OF TONAWANDA, RESPONDENT. (PROCEEDING NO. 2.) 

BARCLAY DAMON LLP, ROCHESTER (MARK R. MCNAMARA OF COUNSEL), FOR PETITIONER. 
RUPP BAASE PFALZGRAF CUNNINGHAM LLC, BUFFALO (MARC A. ROMANOWSKI OF COUNSEL), FOR RESPONDENT. 

 Proceeding pursuant to Eminent Domain Procedure Law § 207 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department) to review the determination of respondent. The determination approved the condemnation of certain real property. 
It is hereby ORDERED that the determination is confirmed without costs and the petition is dismissed.
Memorandum: Petitioner commenced these original proceedings pursuant to EDPL 207 seeking a judgment and order rejecting the determination of respondent, Town of Tonawanda (Town), which authorized the condemnation of property owned by petitioner. The property, situated along the Niagara River, includes a coal-fired electric generating station that was decommissioned in 2016 and water intake structures. The Town held a public hearing on April 25, 2022 and, on July 11, 2022, it adopted its resolution authorizing the acquisition of the property by condemnation. Petitioner commenced proceeding No. 1 on August 12, 2022, asserting that the Town failed to publish a brief synopsis of its determination and findings as required by EDPL 204 (A) and asserting various other grounds for relief. The Town published its determination and findings pursuant to EDPL 204 (A) on August 25 and 26, 2022. Thereafter, petitioner commenced proceeding No. 2 on September 14, 2022, asserting that the Town's publication of its determination and findings was untimely under EDPL 204 (A) and otherwise asserting the same grounds for relief.
As a preliminary matter, we dismiss proceeding No. 1 inasmuch as that part of the petition asserting that the Town failed to publish its determination and findings pursuant to EDPL 204 (A) has been rendered moot by the subsequent publication of that information (see Matter of Hynes v City of Buffalo, 52 AD3d 1216, 1217 [4th Dept 2008]; see generally Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714-715 [1980]) and the remaining grounds for relief asserted in the petition in proceeding No. 1 are duplicative of grounds for relief asserted in the petition in proceeding No. 2 (see Matter of Dudley Rd. Assn. v Adirondack Park Agency, 214 AD2d 274, 278-279 [3d Dept 1995], lv dismissed in part & denied in part 87 NY2d 952 [1996]).
With respect to the merits in proceeding No. 2, petitioner contends that the Town's failure to publish a synopsis of its determination and findings within 90 days of the public hearing violated EDPL 204 (A), requiring this Court to reject the Town's determination. EDPL 204 (A) provides that the condemnor, "within [90] days after the conclusion of the public hearings held pursuant to this article, shall make its determination and findings concerning the proposed public project and shall publish a brief synopsis of such determination and findings in at least two successive issues of an official newspaper if there is one designated in the locality where the project will be situated and in at least two successive issues of a newspaper of general circulation [*2]in such locality." We agree with petitioner that the Town's publication of the synopsis was untimely because it was not made within 90 days following the hearing (cf. Matter of Wechsler v New York State Dept. of Envtl. Conservation, 76 NY2d 923, 927 [1990]; Matter of Ranauro v Town of Owasco, 289 AD2d 1089, 1090 [4th Dept 2001]; Matter of Legal Aid Socy. of Schenectady County v City of Schenectady, 78 AD2d 933, 933-934 [3d Dept 1980]), but we agree with the Town that petitioner was not prejudiced by the delay, and petitioner does not contend otherwise. Under the circumstances, we conclude that the error does not require this Court to reject the determination (see Matter of River St. Realty Corp. v City of New Rochelle, 181 AD3d 676, 677-678 [2d Dept 2020]; Matter of Tadasky Corp. v Village of Ellenville, 45 AD3d 1131, 1132 [3d Dept 2007]; see also Green v Oneida-Madison Elec. Coop., 134 AD2d 897, 898 [4th Dept 1987]).
We reject petitioner's contention that the condemnation will not serve a public use, benefit, or purpose (see EDPL 207 [C] [4]). "What qualifies as a public purpose or public use is broadly defined as encompassing virtually any project that may confer upon the public a benefit, utility, or advantage" (Matter of Syracuse Univ. v Project Orange Assoc. Servs. Corp., 71 AD3d 1432, 1433 [4th Dept 2010], appeal dismissed & lv denied 14 NY3d 924 [2010] [internal quotation marks omitted]). Here, the Town's condemnation of the property serves the public uses of, inter alia, revitalizing and redeveloping the former industrial property, which was a blight on the Town, and maintaining the critical raw water supply to significant industrial employers in the Town (see Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d 1601, 1602-1603 [4th Dept 2020]; Matter of GM Components Holdings, LLC v Town of Lockport Indus. Dev. Agency, 112 AD3d 1351, 1351-1352 [4th Dept 2013], appeal dismissed 22 NY3d 1165 [2014], lv denied 23 NY3d 905 [2014]; cf. Matter of HBC Victor LLC v Town of Victor, 212 AD3d 121, 123-125 [4th Dept 2022]). We therefore conclude that the Town's determination to exercise its eminent domain power "is rationally related to a conceivable public purpose" (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 425 [1986] [internal quotation marks omitted]; see Matter of Kaufmann's Carousel v City of Syracuse Indus. Dev. Agency, 301 AD2d 292, 303 [4th Dept 2002], lv denied 99 NY2d 508 [2003]).
We reject petitioner's further contention that the condemnation was excessive. "[T]he condemnor has broad discretion in deciding what land is necessary to fulfill [its] purpose" (Matter of Eisenhauer v County of Jefferson, 122 AD3d 1312, 1313 [4th Dept 2014] [internal quotation marks omitted]). We perceive no abuse or improvident exercise of discretion by the Town in determining the scope of the taking (see Matter of United Ref. Co. of Pa. v Town of Amherst, 173 AD3d 1810, 1811-1812 [4th Dept 2019], lv denied 34 NY3d 913 [2020]).
Petitioner also contends that the Town failed to comply with the requirements of the State Environmental Quality Review Act (SEQRA) (see EDPL 207 [C] [3]). Our review of the Town's SEQRA determination "is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination was affected by an error of law or was arbitrary and capricious or an abuse of discretion" (Akpan v Koch, 75 NY2d 561, 570 [1990] [internal quotation marks omitted]). We reject petitioner's contention that the Town improperly segmented its SEQRA review. "Segmentation occurs when the environmental review of a single action is broken down into smaller stages or activities, addressed as though they are independent and unrelated, . . . [which is prohibited in order to] prevent[ ] a project with potentially significant environmental effects from being split into two or more smaller projects, each falling below the threshold requiring full-blown review" (Matter of Long Is. Pine Barrens Socy. v Planning Bd. of Town of Brookhaven, 204 AD2d 548, 550 [2d Dept 1994], lv dismissed in part & denied in part 85 NY2d 854 [1995]; see Sun Co. v City of Syracuse Indus. Dev. Agency, 209 AD2d 34, 47 [4th Dept 1995], appeal dismissed 86 NY2d 776 [1995]). Here, the Town determined that acquiring the property would not have any significant adverse environmental impacts and further stated its understanding that any future development or construction at the property would be subject to separate environmental review. There was no improper segmentation inasmuch as the Town "was not required to consider the environmental impact of anything beyond the acquisition" (Court St. Dev. Project, LLC, 188 AD3d at 1603; see GM Components Holdings, LLC, 112 AD3d at 1353).
Petitioner also contends that the Town's stated purpose for acquiring the property manifests an intent to engage in constitutionally-prohibited private enterprise because the Town [*3]intends to sell the property to a private developer. We reject that contention inasmuch as the "[t]aking of substandard real estate by a municipality for redevelopment by private corporations has long been recognized as a species of public use" (Cannata v City of New York, 11 NY2d 210, 215 [1962], appeal dismissed 371 US 4 [1962]).
We have considered petitioner's remaining contentions and conclude that they do not require that this Court reject the determination.
All concur except Lindley, J., who dissents in part and votes to modify in accordance with the following memorandum: I agree with the majority that proceeding No. 1 is moot and should therefore be dismissed. I also agree with the majority's resolution of all but one of the contentions advanced by petitioner in proceeding No. 2. With respect to the majority's conclusion in the second proceeding that the condemnation serves a public use, benefit, or purpose, as required by EDPL 204 (B), however, I respectfully dissent in part. In my view, there is no underlying public use, benefit, or purpose to the proposed taking by respondent, Town of Tonawanda (Town), of petitioner's raw water intake structures. I therefore conclude that the taking of those structures, as opposed to the taking of the remainder of the condemned property, is unlawful under EDPL 204 (B) and violative of both the Fifth Amendment to the Federal Constitution, as applied to the states through the Fourteenth Amendment, and article 1, section 7 of the State Constitution. I would modify the determination accordingly.
As the Town correctly concedes, its condemnation of petitioner's property may be considered two separate and distinct takings, each of which should be evaluated on its own merits. The first taking is of approximately 65 acres of land and improvements on property where the former Huntley Generating Station operated as a coal-fueled power plant for approximately 100 years. The property, which includes approximately 3,300 linear feet of waterfront along the Niagara River, has sat dormant since the power plant was decommissioned seven years ago. Petitioner has been attempting to sell the property since 2018, to no avail, and now the Town proposes to take the underutilized property through eminent domain.
I agree with the majority that petitioner has failed to meet its burden of establishing that the taking of this land does not serve a public use, benefit, or purpose (see EDPL 207 [C] [4]), notwithstanding that a detailed, specific plan for redevelopment has not been finalized by the Town (see Matter of Court St. Dev. Project, LLC v Utica Urban Renewal Agency, 188 AD3d 1601, 1603 [4th Dept 2020]; Matter of GM Components Holdings, LLC v Town of Lockport Indus. Dev. Agency, 112 AD3d 1351, 1352 [4th Dept 2013], appeal dismissed 22 NY3d 1165 [2014], lv denied 23 NY3d 905 [2014]). The taking will benefit the public by removing the blighted conditions arising from the decommissioned power plant, thereby allowing for the redevelopment of the waterfront, and will connect the Riverwalk, which extends along the waterfront in the Town until it reaches the condemned property, with Aqua Lane Park, a public marina located on the other side of the property. That taking is distinguishable from the taking in Matter of HBC Victor, LLC v Town of Victor (212 AD3d 121, 123 [4th Dept 2022]), where the Town admittedly had no idea what it intended to do with the condemned property.
The second taking encompassed in the Town's condemnation relates to petitioner's raw water intake structures, which consist of large concrete tunnels and bays along the Niagara River. The majority finds that second taking to be lawful, but I do not.
Prior to the closure of its power plant, petitioner used the intake system to withdraw millions of gallons of untreated water to provide cooling for its generating units. Since closure of the plant, petitioner has allowed local businesses—specifically, Evonik LLC, Sumitomo Rubber Corporation, USA, LLC, and 3M Company—to obtain water for industrial uses from the river through its intake bays and screening facilities. Petitioner has granted easements and licenses to Evonik and Sumitomo to maintain pump houses and water lines on its property to facilitate the withdrawal and distribution of raw water, which is far less expensive than the treated water that the businesses would otherwise have to purchase for their manufacturing processes.
The Town proposes to take petitioner's water intake structures for the purpose of ensuring that local manufacturers have access to inexpensive raw water. Without that access, the Town asserts, there is a danger that the businesses will relocate out of the area, resulting in a loss of local jobs and tax revenue. But the Town's proposed use of the water intake structures is no [*4]different than the existing use by petitioner, and there is no indication in the record that petitioner will refuse to continue providing water access to local businesses. Indeed, the money paid by the local manufacturers for the licenses and easements is the only revenue petitioner realizes from the property.
In any event, the result should not change even if petitioner wished for some reason to terminate the licenses and easements. Petitioner has the right to do what it wishes with its property, provided, of course, that the use or non-use complies with the applicable zoning laws. Although termination of the licenses and easements would adversely affect local manufacturers, petitioner's property is not the only place on the Niagara River from which raw water may be obtained for industrial use. In fact, before deciding to condemn petitioner's property, the Town considered updating its Water Treatment Plant by installing a water intake system and pumping station to provide water to local manufacturers, including Evonik and Sumitomo. The Town estimated that the project would cost $27.2 million and take approximately three years to complete. Instead of proceeding with the proposed project, the Town decided to take petitioner's water intake system through eminent domain.
In my view, the takings clauses of the Federal and State Constitutions do not permit the government to take land through eminent domain and use it for the exact same purpose for which the landowner is already using it. Moreover, although providing raw water for businesses no doubt reduces manufacturing costs for the private entities receiving the water, it does not serve a legitimate public use. A governmental entity cannot take property from one party for the purpose of providing an economic benefit to other parties merely because the public will incidently benefit from the taking in the form of jobs created or maintained and tax revenue generated therefrom. As we stated in Matter of Syracuse Univ. v Project Orange Assoc. Servs. Corp. (71 AD3d 1432, 1433 [4th Dept 2010], appeal dismissed & lv denied 14 NY3d 924 [2010]), "a merely incidental public benefit coupled with a dominant private purpose will invalidate a condemnor's determination."
If the Town wishes to ensure that local businesses have continued access to inexpensive water from the Niagara River, it can build its own intake system or it can seek to buy petitioner's intake system at a mutually agreeable price. But the Town cannot take petitioner's intake system under the guise of eminent domain in the absence of a dominant public purpose, which has not been demonstrated or even alleged in this proceeding.
Entered: June 9, 2023
Ann Dillon Flynn
Clerk of the Court