Matter of Oneida County Indus. Dev. Agency v Utica Med Bldg. LLC (2024 NY Slip Op 50597(U))

[*1]

Matter of Oneida County Indus. Dev. Agency v Utica Med Bldg. LLC

2024 NY Slip Op 50597(U)

Decided on May 20, 2024

Supreme Court, Oneida County

Clark, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 20, 2024
Supreme Court, Oneida County

In the Matter of the Application to Acquire a Certain Approximately 
 1.09± Acre Parcel and All Improvements Located Thereon at 411 Columbia Street
 in the City of Utica, County of Oneida, New York, Commonly Referred to 
 as Oneida County Tax Map Parcel 318.41-2-38 by Oneida County Industrial  Development Agency, Petitioner/Condemnor,

against
Utica Med Building, LLC, Respondent/Condemnee.

Index No. EFCA2024-000701

Paul J. Goldman, Esq.
Goldman Attorneys PLLC
Attorney for Petitioner/Condemnor
255 Washington Avenue Extension, Suite 108
Albany, New York 12205 (518) 431-0941
Michael A. Fogel, Esq.
Fogel & Brown, P.C.
Attorney for Respondent/Condemnee
120 Madison Street, AXA Towner II, Suite 1620
Syracuse, New York 13202
(315) 399-4343

Bernadette T. Clark, J.

This case is the latest iteration of hospital-related eminent domain litigation regarding a property located at 411 Columbia Street in downtown Utica. Here, petitioner-condemnor Oneida County Industrial Development Agency ("OCIDA"), an industrial development agency within the meaning of General Municipal Law article 18-a that has eminent domain powers under General Municipal Law § 858 (4), has commenced an Eminent Domain Procedure Law ("EDPL") article 4 vesting proceeding by notice of petition and verified petition filed on March 18, 2024.
 Prior Litigation History
Before addressing the current petition, some background regarding the lengthy history of related litigation is necessary. On April 7, 2022, OCIDA issued determinations and findings (see EDPL § 204) related to its proposed acquisition of 411 Columbia Street (see NYSCEF Doc. Nos. 8, 10). OCIDA maintains that it is attempting to acquire this property to create a surface parking lot that will service a medical office building ("MOB") constructed by Central Utica Building, LLC ("CUB") on an adjoining property; this "CUB MOB" has been constructed as part of the broader "Integrated Health Campus" development project associated with the new Wynn Hospital in Utica. The parking lot "would serve the medical building during the day, and the public during off-hours" (Matter of Bowers Dev., LLC v Oneida County Indus. Dev. Agency, 40 NY3d 1061, 1063 [2023]). At the time OCIDA issued these determinations and findings, the subject property at 411 Columbia Street was under contract to be sold from Rome Plumbing and Heating Supply Co., Inc. ("Rome Plumbing") to Bowers Development, LLC ("Bowers").
On May 10, 2022, Bowers brought an original proceeding in the Appellate Division, Fourth Department pursuant to EDPL § 207, seeking to challenge OCIDA's April 7, 2022 determinations and findings. Bowers also challenged OCIDA's determinations and findings by bringing CPLR article 78 and declaratory judgment actions against OCIDA (EFCA2022-002152 and EFCA2023-000906), both of which came before this Court. This Court adjourned these combined article 78 and declaratory judgment cases to await resolution of the EDPL article 2 litigation in the Fourth Department and, eventually, the Court of Appeals.
In a decision dated December 23, 2022, the Appellate Division, over a lengthy dissent from Justice Curran, annulled OCIDA's determination on the basis that the taking of the property for a healthcare facility parking lot fell outside OCIDA's statutory authority under General [*2]Municipal Law § 858 (4) (see Matter of Bowers Dev., LLC v Oneida County Indus. Dev. Agency, 211 AD3d 1495, 1495-1496 [4th Dept 2022]). The Appellate Division later granted OCIDA's motion seeking leave to appeal to the Court of Appeals (see Matter of Bowers Dev., LLC v Oneida County Indus. Dev. Agency, 214 AD3d 1417 [4th Dept 2023]).
The Court of Appeals, in a memorandum decision dated December 14, 2023, reversed and concluded that surface parking for customers of a medical office has a "commercial purpose" and that therefore OCIDA was within its authority in acquiring the property via eminent domain (see Bowers, 40 NY3d at 1064). The Court remitted the case back to the Appellate Division, Fourth Department for consideration of the other arguments Bowers had raised (see id.).
On February 2, 2024, upon remittitur, the Appellate Division issued a decision and order in which it rejected, on the merits, all of Bowers's remaining arguments in opposition to OCIDA's determination to acquire 411 Columbia Street (see Matter of Bowers Dev., LLC v Oneida County Indus. Dev. Agency, 224 AD3d 1240, 1241-1243 [4th Dept 2024]). The ordering language of this February 2, 2024 decision and order reads: "It is hereby ordered that, upon remittitur from the Court of Appeals, the determination is unanimously confirmed without costs and the petition is dismissed" (id. at 1241).
On March 6, 2024, Bowers filed a motion in the Appellate Division seeking reargument of the February 2, 2024 decision and order or alternatively, the granting of leave to appeal to the Court of Appeals (see Exhibit A to NYSCEF Doc. No. 25). On April 8, 2024, while this appellate motion was pending, Bowers discontinued its two article 78 and declaratory judgment actions that were pending in this Court. On May 3, 2024, the Appellate Division denied Bowers's motion for reargument and/or leave (see NYSCEF Doc. No. 31).

 The Current Petition
On March 18, 2024, following the Appellate Division's decision dismissing Bowers's EDPL article 2 case and confirming OCIDA's determinations and findings, OCIDA commenced this EDPL article 4 action. OCIDA named Utica Med Building, LLC ("UMB"), an affiliate of Bowers, as the respondent-condemnee because UMB had since acquired 411 Columbia Street. Specifically, on March 31, 2023, Bowers assigned to UMB its contractual interest in acquiring the subject property from Rome Plumbing. Later the same day, UMB purchased the property. The deed reflecting this transaction was filed with the Oneida County Clerk on February 22, 2024, roughly eleven months later (see NYSCEF Doc. No. 3).
In commencing the case, OCIDA filed the following documents: a notice of petition (NYSCEF Doc. No. 16); a verified petition (NYSCEF Doc. No. 1); and a notice of pendency with attached acquisition map (NYSCEF Doc. Nos. 17-18). Included with the verified petition are exhibits A-N (NYSCEF Doc. Nos. 2-15), which will be discussed further below as necessary. OCIDA's petition seeks an order pursuant to article 4 of the EDPL authorizing the filing of the acquisition map with the Oneida County Clerk and ordering that upon filing said map, OCIDA will obtain vested title to the subject property.
On May 1, 2024, UMB moved by order to show cause to stay resolution of OCIDA's EDPL article 4 petition pending UMB's continued pursuit of appellate review in connection with the EDPL article 2 case (see NYSCEF Doc. Nos. 24-26). The next day, this Court filed a letter directed to the attorneys of record indicating that it was declining to sign UMB's proposed order to show cause (see NYSCEF Doc. No. 27).
On May 8, 2024, UMB filed its verified answer (NYSCEF Doc. No. 28) in which it raised an affirmative defense arguing that OCIDA's petition is premature under EDPL § 401 (A) (3) because there is not yet a final order in the EDPL article 2 proceeding. Specifically, UMB argues that because EDPL § 207 (B) states that Appellate Division determinations in article 2 matters "shall be final subject to review by the Court of Appeals," there is not a "final order" for purposes of EDPL § 401 (A) (3) until UMB is denied leave to appeal the February 2, 2024 Appellate Division decision to the Court of Appeals. UMB states that it "will be making a motion for leave to appeal to the Court of Appeals" and that this step renders the petition premature. Based upon this prematurity argument, UMB argues for dismissal or the issuance of a stay. As of oral argument on May 15, 2024, counsel for UMB had yet to move in the Court of Appeals for leave following the Appellate Division denying UMB's leave request on May 3, 2024.
OCIDA filed reply papers on May 14, 2024, comprised of a reply (NYSCEF Doc. No. 29); a reply affirmation from Paul J. Goldman, Esq. (NYSCEF Doc. No 30) with exhibits (NYSCEF Doc. Nos. 31-33); and a reply memorandum of law from attorney Goldman (NYSCEF Doc. No. 34). In these papers, OCIDA asserts that it has fully complied with all preconditions for the vesting of title required by EDPL article 4 and that the Appellate Division's February 2, 2024 decision and order was a final order within the meaning of EDPL § 401 (A) (3).
The Court heard oral argument from the parties on May 15, 2024, at which time the Court reserved decision.

Applicable Law
After a condemnor completes the process under article 2 of the EDPL, the second stage of the eminent domain process can proceed under EDPL article 4. In this second stage of the process, "the condemnor must seek the transfer of title to the property by commencing a judicial proceeding known as a vesting proceeding" (Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 543 [2006]). This is the phase of litigation involved in this case.
EDPL § 401 (A) provides that a condemnor can commence an EDPL article 4 vesting proceeding "up to three years after conclusion of the later of" three events. The event relevant to the instant proceeding from which the three-year period is measured is under EDPL § 401 (A) (3): "entry of the final order or judgment on judicial review pursuant to [EDPL § 207]." EDPL § 207 (B), upon which UMB relies, states that an appellate division's "judgment and order" in an EDPL article 2 proceeding "shall be final subject to review by the court of appeals."
EDPL § 402 (B) requires that in matters not involving eminent domain exercised by the State of New York—that is, in eminent domain matters subject to the jurisdiction of supreme court (see EDPL § 501)—the condemnor must bring a verified petition in supreme court prior to filing an acquisition map. Along with the verified petition, the condemnor must file a notice of pendency in the County Clerk's office of the county where the property in question is situated (see EDPL § 402 [B] [1]). The condemnor must serve the owner of the subject property with "notice of the time, place and object of the proceeding" at least 20 days prior to the return date of the petition (EDPL § 402 [B] [2]). The EDPL article 4 petition must be verified by "an authorized officer of the condemnor" (EDPL § 402 [B] [3]). After being served with the verified petition, a condemnee may interpose a verified answer (see EDPL § 402 [B] [4]).
Per the EDPL, the following must be included with the verified petition: (1) proof of [*3]compliance with EDPL article 2, "including a copy of the condemnor's determination and findings" (EDPL § 402 [B] [3] [a]); (2) "a copy of the proposed acquisition map to be filed and the names and places of residence of the condemnees of the property to be acquired" (EDPL § 402 [B] [3] [b]); (3) "a description of the real property to be acquired and its location, either by metes and bounds of each individual parcel, or section, block and lot number, and by reference to the acquisition map and notice of pendency" (EDPL § 402 [B] [3] [c]); and (4) "the public use, benefit or purpose for which the property is required" (EDPL § 402 [B] [3] [d]).
On the return date specified for the petition, if the Court has "proof to its satisfaction that the procedural requirements of this law have been met, the court shall direct the immediate filing and entry of the order granting the petition" (EDPL § 402 [B] [5]). At that point, the condemnor "shall file and enter" the order and the acquisition map with the applicable County Clerk's office, and the act of such filing will then vest title to the property with the condemnor (see id.). "The condemnor takes title to the land free of all encumbrances and inconsistent proprietary rights" (51 NY Jur 2d, Eminent Domain § 394).

Analysis
OCIDA's Petition is Not Premature
Here, the only EDPL article 4 requirement UMB is disputing is whether there is a "final order" in the underlying EDPL § 207 proceeding, and therefore whether the three-year filing period defined in EDPL § 401 (A) (3) has even commenced. For the following reasons, the Court rejects UMB's argument that OCIDA's article 4 vesting petition is premature under EDPL § 401 (A) (3) and concludes that the February 2, 2024 decision and order of the Appellate Division, Fourth Department is a "final order or judgment on judicial review."
CPLR 5611, entitled "When appellate division order deemed final," states: "If the appellate division disposes of all the issues in the action its order shall be considered a final one." The Court of Appeals has described a "final" order as "one that disposes of all of the causes of actions between the parties in the action or proceeding and leaves nothing for further judicial action apart from mere ministerial matters" (Burke v Crosson, 85 NY2d 10, 15 [1995]). OCIDA argues that the February 2, 2024 Appellate Division decision was a "final order or judgment" in the EDPL article 2 case within these definitions, but UMB asserts that because it still has potential appellate recourse available to it in higher courts, the Appellate Division decision is nonfinal.
The Court concludes that the Appellate Division's February 2, 2024 decision disposed of all issues in the EDPL article 2 case (see EDPL 5611), disposed of all EDPL article 2 causes of action pending between the parties (see Burke, 85 NY2d at 15), and left nothing further for judicial action in the EDPL article 2 context (see id.). By its terms, the Appellate Division decision ordered that OCIDA's determination be confirmed and that Bowers's EDPL article 2 petition be dismissed, which left nothing more to be decided in that case.
At this point, the Appellate Division and Court of Appeals collectively have rejected each challenge Bowers, as UMB's predecessor in interest to 411 Columbia Street, raised to OCIDA acquiring that property via eminent domain. The following issues all have been resolved by the appellate courts in this matter:
1. "OCIDA . . . had a rational basis for concluding that the use of the [subject] property was for a 'commercial' purpose," and its determination to condemn the 411 Columbia Street property "was not 'without foundation'" (Bowers, 40 NY3d at 1064). Therefore, [*4]OCIDA acted within the scope of its authority under General Municipal Law § 858 (4) (see id. at 1063-1064).
2. The claim that OCIDA's financial assistance to the project violated the anti-pirating provisions of General Municipal Law § 862 (1) could not be reviewed under EDPL 207 and instead had to be raised under CPLR article 78 (Bowers, 224 AD3d at 1241-1242).
3. OCIDA's determination was "'rationally related to a conceivable public purpose'" and therefore satisfies EDPL 207 (c) (4) (id. at 1242, quoting Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 425 [1986]).
4. OCIDA properly served notice of its hearing to the owners of 411 Columbia Street as required by EDPL article 2 (see Bowers, 224 AD3d at 1242).
5. OCIDA properly identified the location of its project per EDPL 203 (see id.).
6. OCIDA complied with the requirements of the State Environmental Quality Review Act ("SEQRA") and "did not improperly segment its SEQRA review" (id. at 1243).
7. In concluding that none of Bowers's "remaining contentions . . . warrants annulment of the determination" (id.), the Appellate Division also rejected the following points raised in Bowers's petition:
a. OCIDA's taking of the property violated the Fifth Amendment of the United States Constitution;
b. OCIDA's taking of the property violated Section 6, Article 1 and Section 7, Article 1 of the New York Constitution;
c. OCIDA treated Bowers unequally when compared to CUB;
d. OCIDA failed to comply with just compensation requirements;
e. OCIDA failed to consider reasonable alternatives to taking the property from Rome Plumbing and Bowers; and
f. OCIDA and CUB had acted in bad faith and have not attempted to negotiate with Bowers or Rome Plumbing in good faith.
Viewed in the light of this analysis, the February 2, 2024 Appellate Division decision "certainly was 'final' in the sense that it resolved all issues before the court and completely determined the rights of the parties" (Matter of New York State Urban Dev. Corp. [42nd Street Dev. Project — Site 8 South], 193 Misc 2d 290, 296 [Sup Ct, New York County 2002]). Put differently, the Fourth Department's "disposition of these issues, on its face, is final and unambiguous" (id.).
Although "[c]ase law interpreting the interplay between EDPL 401 and 207 is sparse" (id. at 293) two trial-level cases have confronted the exact "prematurity" argument UMB raises here, namely that an Appellate Division decision dismissing an EDPL article 2 case is not "final" for purposes of opening the three-year EDPL § 401 (A) (3) filing window if the condemnee is pursuing further review in the Court of Appeals. In both cases, the courts rejected this prematurity argument and found that the EDPL article 4 petition could proceed even while the condemnee pursued further appellate recourse (see Matter of New York State Urban Dev. Corp. [Atl. Yards Land Use Improvement and Civil Project Phase 1], 26 Misc 3d 1228[A], *12-*14 [Sup Ct, Kings County 2010] [condemnee had a pending motion to reargue in the Court of Appeals]; UDC [42nd Street Dev. Project], 193 Misc 2d at 292-297 [condemnee was seeking to appeal Appellate Division decision to the Court of Appeals]). One of these Courts, after finding that the Appellate Division decision dismissing the condemnee's EDPL article 2 petition was, by [*5]its terms, final, noted: "requiring a condemnor to wait an additional [period] after an Appellate Division EDPL 207 review for a possible notice of appeal runs counter to the stated goal of EDPL 207 (B) that determinations proceed 'as expeditiously as possible'" (UDC [42nd Street Dev. Project], 193 Misc 2d at 296). These appear to be the only two cases addressing this issue.
Although these cases are not binding upon this Court, the Court finds their logic and reasoning highly persuasive and concurs with the conclusions reached therein. The conclusion reached by these two courts—that the respective Appellate Division dismissals of the condemnees' EDPL article 2 actions were final for purposes of EDPL § 401 (A) (3)— aligns with this Court's view of the facts here; as discussed above, this Court interprets the February 2, 2024 Appellate Division decision and order as being "final" within the commonly-accepted meaning of that term, as defined in CPLR 5611 and Burke v Crosson (85 NY2d at 15). In other words, the facts of this case indicate that the decision in question is final, and these two persuasive cases indicate that legally, this Court is on solid ground in rejecting UMB's prematurity argument.
Thus, this Court finds that "entry of the final order or judgment on judicial review pursuant to [EDPL § 207]" (EDPL § 401 [A] [3]) occurred on February 2, 2024. As a result, OCIDA's EDPL article 4 petition in this matter is not premature and properly has been brought within the three-year window provided in EDPL § 401 (A).

 OCIDA Has Satisfied the Statutory Requirements for Vesting
Having determined that OCIDA's petition is timely, the Court now turns to the other EDPL article 4 requirements. Although UMB has not challenged OCIDA's compliance with any of these other requirements, the Court nevertheless will address them in the interest of thoroughness.
The petition was verified as required by EDPL § 402 (B), and that verification was signed by an officer of OCIDA, the condemnor, as required by EDPL § 402 (B) (3) (see NYSCEF Doc. No. 1, p.8 of 9). OCIDA filed a notice of pendency with the Oneida County Clerk that meets the requirements of EDPL § 402 (B) (1) (see NYSCEF Doc. No. 17). OCIDA served UMB, the condemnee, more than 20 days in advance of the return date of the petition as required by EDPL § 402 (B) (2) (see NYSCEF Doc. Nos. 21-23 [service on March 25, 2024; April 2, 2024; and April 5, 2024]). Because OCIDA previously conducted a public hearing under EDPL article 2, the publication requirement under EDPL § 402 (B) (2) (a) is inapplicable. Through Exhibit G to the verified petition (NYSCEF Doc. No. 8), OCIDA has provided the required proof of its compliance with EDPL article 2, including its issuance of a determination and findings relative to its intent to acquire 411 Columbia Street (see EDPL § 402 [B] [3] [a]). OCIDA also has provided "a copy of the proposed acquisition map to be filed and the names and places of residence of the condemnees" for the subject property as required by EDPL § 402 (B) (3) (b) (see NYSCEF Doc. Nos. 1-2, 18). Exhibit A to both the verified petition and the notice of pendency (see NYSCEF Doc. Nos. 2, 18) provides a description of the subject parcel that satisfies that EDPL § 402 (B) (3) (c). Finally, OCIDA's verified petition describes the "[p]ublic benefit or purpose for which the property is required" (EDPL § 402 [B] [3] [d]) and asks this Court for an order "authorizing the filing of the acquisition map" so that "title will vest" in OCIDA (EDPL § 403 [B] [3] [e]).
Based upon this, the Court has "proof to its satisfaction that the procedural requirements of [EDPL article 4] have been met" (EDPL § 402 [B] [5]). Accordingly, the Court grants the [*6]petition as mandated by EDPL § 402 (B) (5) and orders, as spelled out below, that OCIDA is authorized to file its acquisition map with the Oneida County Clerk. "Upon the filing of the order and the acquisition map, the acquisition of the property in such map shall be complete and title to such property shall then be vested in" OCIDA (EDPL § 402 [B] [5]).
Now, therefore, in accordance with the above, it is hereby
ORDERED that petitioner-condemnor OCIDA's petition is GRANTED; and it is further
ORDERED that, pursuant to EDPL § 402 (B) (5), petitioner-condemnor OCIDA shall file the acquisition map (NYSCEF Doc. No. 2) in the office of the Oneida County Clerk, together with a copy of this order; and it is further
ORDERED that upon such filing, title to the property at 411 Columbia Street (Oneida County Tax Map Parcel 318.41-2-38) shall vest in petitioner-condemnor OCIDA.
This shall constitute the Decision and Order. The original Decision and Order is returned to the attorney for petitioner-condemnor. All other papers are being delivered by the Court to the County Clerk for filing. The signing of this Decision and Order does not constitute entry or filing under Civil Practice Law and Rules § 2220. Counsel is not relieved from the applicable provisions of that rule with respect to filing, entry, and notice of entry.
ENTER:
Dated: May 20, 2024
Utica, New York
Hon. Bernadette T. Clark, J.S.C.